C. B. NASH COMPANY, APPELLEE, v. WESTERN UNION
TELEGRAPH COMPANY, APPELLANT.

FILED APRIL 16, 1915. No. 18081.

1. Telegraphs: DELAYED MESSAGE: DAMAGES. For a breach of its con-
tract to promptly transmit and deliver a message over its lines,
a telegraph company is liable for such damages as may reasonably
be supposed to have been in the contemplation of both parties at
the time when the contract was made.

2. ———: ———: ———: PROOF. Such damages being dependent
upon the knowledge of the parties, proof of such knowledge, where
the message is in cipher, may be made by evidence of facts and
circumstances additional to such as are disclosed by the message
itself.

3. ———: ———: ———: SUFFICIENCY OF EVIDENCE. Substance of
the evidence set out in the opinion, and *held* sufficient to sustain
the verdict.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE. *Affirmed.*

*Brogan & Raymond,* for appellant.

*Crofoot & Scott* and *W. C. Fraser, contra.*

BARNES, J.

Appeal from a judgment of the district court for Douglas county, in an action for damages for a failure to transmit and deliver a telegram. The facts alleged in plaintiff's petition may be briefly stated as follows: At 10:10 o'clock A. M., on Thursday, January 30, 1908, the plaintiff, the C. B. Nash Company, delivered to the Western Union Telegraph Company at its main office in the city of Omaha the following telegram: "Shearson, Hammill & Co., 71 Broadway, New York, N. Y. Outbreak tapestry preternatural. Collect. (Signed) The C. B. Nash Company." Across the face of the telegram was written in red ink "Rush." The message when translated reads: "Sell 300 American Smelting & Refining Company common stock at 68 1/8." At the time when the message was delivered to the telegraph company, the plaintiff had on deposit with Shearson, Hammill & Company 300 shares of the stock designated, and wished its brokers to sell the same as directed by the telegram. Had the defendant promptly transmitted and delivered the message, Shearson, Hammill & Company would have sold the stock at a price equal to or greater than that named. On February 1, 1908, plaintiff telegraphed Shearson, Hammill & Company to ascertain if the sale had been made, and was informed that the order to sell had not been received. On the 3d of February, 1908, plaintiff sent them a duplicate of the original message, which was received by them on the 5th day of February, 1908. Meanwhile the price of said stock had declined to $62.50 a share, at which price the stock was sold, and plaintiff was damaged, by the failure of the telegraph company to promptly transmit and deliver the message, in the sum of $1,986, for which, with interest, the plaintiff prayed judgment. The defendant's answer was a general denial. On the trial the court limited the measure of damages to the difference between the price at which the stock would have sold on January 30, 1908, had the telegram been duly transmitted and delivered, and the price at which the plaintiff could have sold the stock on February 3, 1908. The jury returned a verdict for the plaintiff for $600, with interest amount-

ing to $199, or a total of $799. Judgment was rendered on the verdict, and the defendant has appealed.

It appears that before the introduction of the evidence the defendant objected to the introduction of any testimony, because the petition failed to state a cause of action, the message in question being in cipher, and because its contents were not disclosed or made known to defendant. The objection was overruled. At the close of all of the evidence the defendant moved the court to direct the jury to return a verdict in its favor, claiming that there was no evidence before the court tending to show that defendant had notice of the nature and extent of the business covered by the telegram which would make defendant liable for the special damages claimed. The motion was overruled. The court also refused to instruct the jury that defendant would be liable for nominal damages only. These rulings constitute the defendant's assignments of error.

It appears that at the trial L. F. Crofoot, a witness for plaintiff, testified that he was the secretary, treasurer and director of the C. B. Nash Company; that the company maintained its office in the Omaha National Bank building since January 1, 1907; that the defendant company has maintained its office in the basement of the same building; that the business of the plaintiff, among other things, was the purchase and sale of stocks listed on the New York stock exchange; that such transactions were carried on by telegrams, wholly or partly in cipher, and open, sent and received by the Western Union Telegraph Company, through its office in the Omaha National Bank building; that such telegrams were sent to and received by Henry Clews & Company, Clark Dodge & Company, Shearson, Hammill & Company, W. P. Bonbright & Company, all New York stock brokers; that the plaintiff company used the same cipher code in messages sent to and received by Shearson, Hammill & Company, and the object in using the code was to save tolls; that Henry Clews & Company is one of the oldest brokerage houses in New York, and has had an extensive business for many years; that Clark

Dodge & Company have also been in business for many years and are prominent brokers; that Shearson, Hammill & Company have been in business a shorter period, but are prominently known as stock brokers; that the method of sending the telegrams was to have them written in the plaintiff company's office and sent down to the telegraph company's office for transmission, or delivered to a messenger of the telegraph company.

W. W. Umsted testified that for many years he had been manager of the Western Union Telegraph Company in Omaha; that the telegraph company and the C. B. Nash Company maintained offices in the same building; that, as manager of the telegraph company, he had charge of all of the business transacted in its general office in that build-. ing; that three or four clerks received the messages filed by the public for transmission at the counter in the general office; that he knew the C. B. Nash Company, and the business in which it was engaged; that its interests were large, and that it was frequently sending and receiving business messages through the telegraph company's main office; that he knew L. F. Crofoot was in charge of the plaintiff's business, and knew the C. B. Nash Company's interests were varied, and that telegrams sent and received by it related to business transactions, but he did not know whether it referred to smelter, or street railway, or to what it referred; that he could not say that any of plaintiff's messages did not relate to business transactions; that he knew that more or less of plaintiff's messages, received and sent, related to business transactions of importance; that cipher messages are common in the larger portion of all branches of important business, and are extensively used by brokers in all lines of commodities; that, knowing the business in which a concern is engaged, when a message is tendered to the telegraph company, written in cipher, he knew it related to a business transaction; that when such messages are received from a business concern it is assumed that they relate to business transactions; that stock brokers use cipher messages in transacting their business in buying and selling to a large extent; and it

was a common practice for stock brokers to send and receive messages in cipher relating to their business; that he would regard the message in suit as an important message, and that it was so classed, partly because it was the C. B. Nash Company's business and partly because of the word "Rush" written in red ink across the face of the message.

The following is the substance of a stipulation of facts introduced in evidence on the trial: For more than five years past Shearson, Hammill & Company have been engaged in business as stock brokers, buying and selling bonds and stocks on the New York stock exchange. During that time the said firm has maintained its New York office at 71 Broadway, also branch offices in the cities of Chicago and Denver. In conducting the business, said firm has seven private wires for transmission of telegrams in connection with its business, which wires are leased from the defendant. Said firm sends and receives daily by its own operators numerous telegrams over said wires relating to the purchase and sale of bonds and stocks on the New York stock exchange. Shearson, Hammill & Company had in use during the period mentioned a telegraphic cipher code for sending messages to and receiving messages from its customers. A copy of the code was attached to the stipulation and made a part thereof. Messages written in said code relating to the purchase and sale of bonds and stocks were frequently sent and received over defendant's wires during the period mentioned in paragraph 1, by Shearson, Hammill & Company and its customers, including plaintiff. Prior to January 30, 1908, plaintiff frequently sent to and received from Shearson, Hammill & Company messages in said code which were transmitted over defendant's lines between New York and Omaha, relating to purchases and sales of stocks. It was stipulated, however, that defendant did not admit by the stipulation, or by anything contained therein, that the defendant had knowledge or notice that any of the messages written in said code and sent and received over defendant's wires during the period mentioned did in fact relate to the pur-

chase and sale of bonds and stocks or that defendant had
any knowledge or notice to what said messages related.
A long list of messages, sent and received by the plaintiff
company to different stock brokers at different points, but
more especially in New York City, was received in evi-
dence. It appears from a translation of the code that the
word "outbound" means "sell for our account and risk."
The stipulation also contains the statement that William
W. Remey, manager of Shearson, Hammill & Company,
would testify, if permitted to do so over defendant's ob-
jection, that, had the aforesaid telegram been promptly
transmitted and delivered by defendant to Shearson, Ham-
mill & Company, his firm would have sold 300 shares of the
stock in question at $68 1/8 a share; that the New York
stock exchange closed at 12 o'clock noon, Eastern time, on
Saturday, February 1, and next opened for the transaction
of business at 10 o'clock A. M., Eastern time, on Monday,
February 3, 1908. The foregoing is, in substance, the evi-
dence on which the cause was tried.

Defendant's first contention is that damages for loss of
an expected sale or purchase, caused by a failure to deliver
a purely cipher telegram, cannot be recovered; and, sec-
ond, that if any recovery could be had the damages would
be only nominal. Appellant supports these contentions by
a long list of authorities, commencing with *Hadley v. Bax-
endale,* 9 Exch. (Eng.) *341, 26 Eng. Law & Eq. 398; and
it may be conceded that, if the facts justified the applica-
tion of the rules invoked by the defendant, these conten-
tions should be sustained. From an examination of the
record, we are constrained to hold that the rule contended
for by the defendant should not be applied in this case.
Section 7406, Rev. St. 1913, provides, among other things,
that a telegraph company shall be liable for the nondelivery
of and for all mistakes in transmitting messages by any
person in its employ. This statute was construed in *Kemp
v. Western Union Telegraph Co.,* 28 Neb. 661, *Western
Union Telegraph Co. v. Kemp,* 44 Neb. 194, and again in
*American Express Co. v. Postal Telegraph-Cable Co.,* 97
Neb. 701.

In our opinion the evidence in this case is sufficient to bring it within the rule announced in *Smith v. Western Union Telegraph Co.*, 80 Neb. 395, *Western Union Telegraph Co. v. Church*, 3 Neb. (Unof.) 22, *Baldwin v. United States Telegraph Co.*, 45 N. Y. 744, and *Brooks & Son v. Western Union Telegraph Co.*, 26 Utah, 147. In the case last cited it was said: "But the authorities hold, almost uniformly, that it is sufficient to create a liability on the part of a company for all damages directly and proximately resulting from the negligent acts of its agents in failing to transmit a message in the form in which it is delivered, or in omitting to send it at all, provided the message discloses enough of its nature and importance to put an ordinary and prudent person upon inquiry. * * * The first message herein showed on its face that it referred to a commercial transaction. This fact, together with the fact that respondent B. B. Brooks endeavored to send a second message relating to the same matter, with the word 'RUSH' written conspicuously thereon, was notice to the appellant that these messages were important, and, if appellant had desired any further information on this point, it no doubt could have obtained it by inquiring of Brooks when he delivered the message to appellant for transmission over its wires."

The message in question in this case on its face, though in cipher, would furnish a person of ordinary prudence notice that it was important; and this fact, taken together with the course of business that had obtained between the plaintiff and the defendant company for many years, was sufficient notice to the defendant that substantial loss might follow its failure to promptly transmit and deliver the message to Shearson, Hammill & Company. We are therefore of opinion that the district court did not err in refusing to sustain the defendant's motions and in submitting the case to the jury. A verdict having been rendered in favor of the plaintiff upon this evidence and the instructions of the court, we feel constrained to sustain the verdict. We are aware that the question is a close one; but, on an examination of the whole record, we are of

opinion that the defendant had a fair trial, that it was chargeable with notice of the importance of the plaintiff's message, and that substantial loss would follow a failure to promptly transmit and deliver it.

The record being without reversible error, the judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.