R. A. HODGES, ADMINISTRATOR OF MARTHA HODGES, DECEASED, v. VIRGINIA-CAROLINA RAILWAY COMPANY.

(Filed 19 May, 1920.)

1. **Pleadings—Demurrer.**

A demurrer to a complaint is bad if the allegations therein, taken as true and interpreted in the light most favorable to the plaintiff, tend to establish a good cause of action.

2. **Torts—Damages—Misdemeanors—Statutes—Cutting Telephone Wires —Contracts.**

The willful cutting of a telephone wire in public use for hire is made a misdemeanor punishable by fine or imprisonment by our statute, Rev., 3845, and where such act has caused damage to another the action sounds in tort, making the tort feasor liable for any injuries naturally following and flowing from the wrongful act, independent of any contractual relations between the parties.

**3. Same—Physicians—Childbirth—Death of Wife—Pleadings—Demurrer.**

Upon allegations of the complaint that the plaintiff had made arrangement with a physician to attend his wife at childbirth upon being called upon a public service telephone line connecting his residence with a certain store, from which the call should be made, which would have been accomplished except for the defendant company knowingly, willfully, and unlawfully cutting this line upon its right of way, and that the failure of the attendance of the physician resulted in the death of the plaintiff's wife, which would not otherwise have occurred: *Held*, a demurrer thereto admits the allegations to the effect that the defendant's tort in knowingly, willfully, and unlawfully cutting the wire was the proximate cause of the failure of the physician to be present at the childbirth, and that had he been present, the plaintiff's wife would not have died, and the demurrer should have been overruled.

**4. Torts—Physicians—Childbirth—Death of Wife—Damages.**

Where the defendant is liable in tort for the failure of the plaintiff to have a physician present at childbirth of his wife, proximately resulting in her death, the measure of damages is the value of the life of the wife to be estimated under the decisions of the Supreme Court, and are not too remote to be recoverable.

CIVIL ACTION, tried before *McElroy, J.,* at Fall Term, 1919, of ASHE.

The defendant demurred to the complaint upon the ground that it did not state a cause of action. The plaintiff administrator of Martha Hodges was her husband. She died during childbirth on 22 March, 1918. The complaint is as follows:

"That prior to 22 March, 1918, and prior to the building and construction of the Virginia-Carolina Railway Company's line of railroad into Ashe County, North Carolina, there was a telephone line running from Tuckerdale, North Carolina, to the offices of Dr. A. L. Jones and Dr. S. E. Pennington, about five miles distant from Tuckerdale, which telephone line had been continuously in use since its construction, and that said line was a public-service line and was operated for hire in the transmission of messages over said line. That when the Virginia-Carolina Railway Company laid off and constructed its line of railroad, the said railroad at three different points passed under said telephone line or over said telephone line, and for some three years or more after said railroad was constructed and in operation, the telephone line remained intact, over the tract and line of the Virginia-Carolina Railway. That during such periods, as before alleged, messages at various times were transmitted over said line, calling for said physicians, to the bedside of various sick persons, to give them medical care and attention, to which calls they responded.

"That three weeks prior to 22 March, 1918, this plaintiff engaged the services of Dr. S. E. Pennington and Dr. A. L. Jones, both of whom were connected with the telephone line mentioned, to be present and

administer to the wife of this plaintiff, Martha Hodges, who was expected to be delivered of a child during the month of March, 1918. That the plaintiff was and is a poor man, with a large family to maintain and support, and was compelled to be away from home working on his job and under contract, in order to maintain and support his family, and that prior to his going away he had made arrangements with some of his neighbors to stay at the home of the plaintiff at nights with his wife and children, in order that there might be some one to be present to call a physician, which he had engaged, when their services should be needed, and that he had also made arrangements with J. E. Tucker or his family to call either Dr. Pennington or Dr. A. L. Jones, when notified that plaintiff's wife needed medical or the attention of a doctor, and that he had also informed Drs. E. S. Pennington and A. L. Jones that he would call or have them called when his wife became confined, or needed their attention. That J. E. Tucker lived at Tuckerdale, and the telephone was in his house, and the plaintiff lived about one-fourth mile from the home of J. E. Tucker at this time.

"That the defendant owned and operated a telephone line on its right of way and along its railroad track, between Abingdon, in Virginia, and Elkland, in Ashe County, N. C., during the year of 1918, and prior thereto, as well as since.

"That on 22 March, 1918, the defendant did knowingly, willfully, and unlawfully and negligently cut the telephone wires of the telephone line between Tuckerdale and the offices of Dr. S. E. Pennington and Dr. A. L. Jones, without notice to the owners of the telephone line, or the persons connected on said line and without license or authority. That on 22 March, 1918, the plaintiff's wife, Martha Hodges, became ill and confined in child labor, and she sent one Mrs. Marcus Combs to the phone office at J. E. Tucker's to phone for either Dr. A. L. Jones or Dr. S. E. Pennington, either one that could be gotten, and request him that a phone message be sent requesting the said doctor or doctors to come at once to the home of this plaintiff, to attend plaintiff's wife. And that plaintiff's wife and intestate sent Marcus Combs to the home of George Stike to go after this plaintiff, the plaintiff having had arrangements that said Stike should come after him on notice. That repeated attempts were made to call Dr. A. L. Jones and Dr. S. E. Pennington, and they could neither be called. Dr. A. L. Jones was at home at this time, and would have come immediately if he could have been called over the phone. That as soon as it was discovered that the said Dr. A. L. Jones could not be called on the phone, a runner was placed on a horse and sent to the home of Dr. Jones, who came as soon as he received the call or information that his services were needed at the home of the plaintiff, but he reached the home of the plaintiff too

late to save the life of plaintiff's wife and intestate. That there was no other physician available who could be called.

"That the reason of the wanton, unlawful, and negligent act on the part of the defendant in cutting the telephone wire and line between Tuckerdale and the offices of Dr. S. E. Pennington and Dr. A. L. Jones, which telephone line the plaintiff had a right to believe, and did believe, would be in ordinary condition, and over which the call for physicians could be made, this plaintiff or his intestate was not able to obtain medical attention, and service for his said wife and intestate at the proper and necessary time to save the life of the plaintiff's wife and intestate, Martha Hodges. That if the said telephone line hereinbefore referred to had not been cut Dr. A. L. Jones could have been reached in time to have arrived at the home of plaintiff in ample time to save the life of plaintiff's intestate. On the account of all of which, the plaintiff has been damaged in the sum of $5,000."

The demurrer was sustained, and the action dismissed. Plaintiff appealed.

*C. B. Spicer and G. L. Park for plaintiff.*
*Bowie & Austin for defendant.*

BROWN, J. The grounds of demurrer are:

"(a) It appears from the face of the complaint that the alleged negligence of the defendant was not the proximate cause of the plaintiff's intestate's injury.

"(b) And that it is not alleged in the complaint that the defendant has violated any contractual duty that it owed to the plaintiff's intestate.

"(c) That the damages alleged in the plaintiff's complaint are too remote to sustain an action against the defendant."

We think that the points intended to be presented by the learned counsel for the defendant cannot well be raised by demurrer to this complaint. The allegations are comprehensive and pointed. Upon demurrer those allegations of fact must be accepted as true and interpreted in the light most favorable to the plaintiff. *Smith v. Hartsell,* 150 N. C., 71. The complaint charges that the defendant knowingly and willfully and unlawfully cut the telephone line of a public service company without notice; that this line connected with Drs. Pennington and Jones whom he had engaged to attend his wife in childbirth. That as soon as his wife was taken down he attempted to communicate with the doctors by this public-service phone, and could not do so because it had been wrongfully cut by the defendant without notice to any one. That there was no other physician available who could be obtained. Plaintiff further specifically alleges that these physicians could and

would have come at his call but by reason of the unlawful cutting of the wires of the telephone company, they were unable to reach the plaintiff's wife in time to save her life. Plaintiff further alleges that if the line had not been cut, a physician could have been reached in time to have arrived at the home of the plaintiff to save the life of his wife. The cutting of telephone wires is made a misdemeanor punishable with fine or imprisonment by sec. 3845 of the Revisal. Upon the facts stated in this complaint the defendant and its agents are guilty of a misdemeanor. The plaintiff alleges that this unlawful act was the cause which resulted in his wife's death, and that it was the proximate cause of the same.

It is not necessary that the plaintiff and the defendant should have had any contractual relations. Upon the allegations of the complaint the defendant is guilty of a tort, and as such is liable for any injuries naturally following and flowing from the wrongful act.

In *Drum v. Miller*, 135 N. C., 214, it is said: "It may be stated as a general rule that when one does an illegal or mischievous act which is likely to prove injurious to another . . . he is answerable in some form of action for all of the consequences which may directly and naturally result from his conduct. It is not necessary that he should actually intend to do the particular injury, which follows, nor indeed any injury at all, because the law in such cases will presume that he intended to do that which is the natural result of his conduct."

It is undeniable if the allegations of the complaint are true, that the failure of the physicians to arrive in time to minister to the wife during childbirth, was the direct result of the unlawful act of the defendant. It is alleged in the complaint that if a physician had arrived in time he could have saved her life. This may be very hard to prove, but it may be that she died from some cause that a physician could have remedied had he been present. We are not called on to pass on this question, for it is distinctly alleged in the complaint that the condition of the wife was such that a physician could in all probability have saved her life. This allegation must be taken to be true upon demurrer. The position that the damages are too remote to sustain an action cannot be maintained. If the jury should find under proper evidence that the failure of the physician to arrive in time was caused by the wrongful act of the defendant in cutting the telephone wires, that would establish the tort. If the jury should further find upon competent and sufficient evidence that the circumstances of the childbirth and the conditions were such that had the physician been present, he could have administered remedies which in all reasonable probability, judging by experience, would have saved the life of the wife, then the unlawful act of the defendant would be the proximate cause of her death. This would

establish a cause of action. The damages would be the value of the life of the wife to be estimated by the jury in accordance with the numerous decisions of this Court.

We think the demurrer should have been overruled, and the defendant allowed to answer.

Error.