Hillsborough, }
April 4, 1922. }

### WILBUR E. BARRETT *v.* NEW ENGLAND TELEPHONE AND TELEGRAPH CO.

An action of tort cannot be maintained where the declaration sets out a contract and alleges the defendant's negligent failure to perform it.

This rule applies to an action against a telephone company where the contract is for the usual and ordinary service and the only wrong complained of is the negative one of failing to perform such service and no special circumstances exist tending to show that the company was chargeable with knowledge of facts from which the likelihood of special damage should be inferred.

CASE. The plaintiff alleged that he was a subscriber entitled to telephone service at his residence where the defendant had installed an instrument, that on the morning of November 22, 1917, service was interrupted without his fault, that the defendant had due notice of such interruption early in the day, but carelessly and negligently failed to restore the service, that in the evening of the same day the plaintiff's buildings accidentally took fire, that because of the interruption of telephone service the plaintiff was unable to summon the fire department, and his buildings were completely destroyed by fire and that the greater part of such loss would have been prevented except for the failure of the telephone service.

Trial by jury. At the close of the plaintiff's evidence a nonsuit was ordered by *Marble*, J., who transferred the case upon the plaintiff's exception, from the May term, 1920, of the superior court.

*Doyle & Doyle* and *Alvin J. Lucier* (*Mr. Paul J. Doyle* orally), for the plaintiff.

*Pitt F. Drew* (of Massachusetts) and *Irving W. Drew* (*Mr. Pitt F. Drew* orally), for the defendant.

PEASLEE, J. The plaintiff's declaration sets out a contract with the defendant and alleges a negligent failure to perform the same. That no action sounding in tort can be maintained for such a fault is the settled law of this jurisdiction. *Dustin* v. *Curtis*, 74 N. H. 266; *Petroski* v. *Mulvanity*, 78 N. H. 252. But the case has been argued upon the theory that something more than a mere breach of an ordinary private agreement was involved, and as the defect in the declaration is curable by amendment the question whether upon the evidence the plaintiff could go to the jury upon any theory of liability has been considered.

The defendant is a public service corporation. P. S., c. 81, s. 13. It is upon this proposition, and this alone, that it is claimed that a liability exists here. It is therefore necessary to examine the law as to the nature and extent of the obligations and burdens imposed by law upon those who enter upon a public calling of this class. The business of transmitting intelligence through the instrumentality of electricity has called for the determination of how far the analogies of the law furnished guides to the limitations surrounding these callings. None of these questions have heretofore arisen in this state, and resort must be had to other jurisdictions for precedents dealing directly with the matter in hand.

As the telegraph is much earlier in date, most of the authorities relate to cases involving that business; but it is like that of the telephone companies in so many respects, that all the cases involving the nature and extent of the liabilities imposed have been treated generally as authorities upon the questions in any particular case.

It was at first thought that the analogy to the situation of the common carrier of goods was substantially a perfect one, and that the telegraph company was liable as an insurer for the transmission of messages. But the fallacy of this view was soon recognized. It was abandoned, and is nowhere held at the present time.

The English authorities are explicit to the effect that the only liability is one arising from contract and that the company's liability is limited as it would be in case of a private agreement. *Playford* v. *Company*, L. R. 4 Q. B. 706.

A few courts in this country have gone to the opposite extreme and have held that there is a tort liability, in the broadest sense, and that all damages traceable to the company's neglect may be recovered. *Mc-Peek* v. *Company*, 107 Ia. 356; *Glawson* v. *Company*, 9 Ga. App. 450.

The case of *Hodges* v. *Railroad*, 179 N. C. 566, also relied upon by the plaintiff, was a suit against a stranger for wrongfully interrupting communication. It does not involve the present question, but merely deals with the law as to proximate and remote cause, as applied in the law of torts generally. And while it is held in that jurisdiction that an action of tort lies for failure to furnish service, the recovery of unusual consequential damages is limited to cases where the defendant had notice of the peculiar facts. *Carmichael* v. *Company*, 157 N. C. 21. "It is immaterial under our system of practice whether the action is in tort for the negligence in the discharge of a public duty or for breach of contract for prompt delivery, for the recovery in either case is compensation for the injury done the plaintiff, and which was reasonably in contemplation of the parties as the natural result of the breach of the contract or default in discharging the duty undertaken." *Kennon* v. *Company*, 126 N. C. 232.

The greater number of American courts have avoided both extremes and adopted the rule just quoted. Recognizing the essential principles which should apply to all public service agencies — the duty to serve all alike and for a fair price, and the status of the party as "that of one held to service" (*McDuffee* v. *Railroad*, 52 N. H. 430, 448, 449) — they have also treated this duty of service as being essentially a status resulting from the consent of the parties and as being one where the liabilities incurred are limited accordingly. The measure of liability which has been arrived at by the application of these principles is stated in the early case of *Primrose* v. *Company*, 154 U. S. 1. "Telegraph companies resemble railroad companies and other common carriers, in that they are instruments of commerce; and in that they exercise a public employment, and are therefore bound to serve all customers alike, without discrimination. . . . But they are not common carriers; their duties are different, and are performed in different ways; and they are not subject to the same liabilities. . . . Under any contract to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely

to result from its breach." *Ib.* 14, 29. The action was in case for negligence.

"These damages are disallowed, not because they cannot be traced directly as the immediate and undoubted effect of the breach, but because they are in their nature uncertain and contingent, and, perhaps more decidedly, because they are not such as would naturally flow from such a breach, and could not fairly be considered as having been within the contemplation of the parties at the time of entering into the contract." *True* v. *Company*, 60 Me. 9, 25.

"A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business of life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party had bound himself to perform and to the compensation paid and received therefor." *Squire* v. *Company*, 98 Mass. 232, 237. This also was an action on the case for negligence.

The rule as stated in these cases has been generally accepted as defining the limits of the liability imposed upon these companies, and has been recognized many times. *Baldwin* v. *Company*, 45 N. Y. 744; *Western Union &c. Company* v. *Sullivan*, 82 Oh. St. 14; *Western Union &c. Company* v. *Gildersleve*, 29 Md. 232; *Beaupré* v. *Company*, 21 Minn. 155; *Nash Company* v. *Company*, 98 Neb. 210; *Fererro* v. *Company*, 9 App. D. C. 455; *Fergusson* v. *Company*, 178 Pa. St. 377; *Fitch* v. *Company*, 150 Mo. App. 149; *Southern Telephone Co.* v. *King*, 103 Ark. 160; *Western Union &c. Co.* v. *Wilson*, 32 Fla. 527; *Candee* v. *Company*, 34 Wis. 471; *Southwestern Telegraph &c. Co.* v. *Solomon*, 54 Tex. Civ. App. 306; *Postal Telegraph &c. Co.* v. *Lathrop*, 131 Ill. 575; *Wheelock* v. *Company*, 197 Mass. 119; *Kolliner* v. *Company*, 126 Minn. 122; 2 Sed. Dam. s. 879. If a broader liability could have been sustained by applying certain analogies to the earlier situations which had been passed upon, it is equally true that the law affords sufficient precedents for the conclusions reached.

While there are no cases in this state dealing with the liabilities of telegraph or telephone companies, yet the limitation which has been declared as to the liability of a common carrier, is in accord with the prevailing rule as to the more modern public utilities. Although a common carrier is liable as an insurer for the value of the goods committed to his care, it does not follow that he is liable for all the consequential damages which are incident to such loss because

of the peculiar facts of the particular case. That he is not so liable in the absence of notice, but that his responsibility is limited by the general rule before stated, was decided in England in the leading case of *Hadley* v. *Baxendale*, 9 Ex. 341. This rule was approved in *Deming* v. *Railroad*, 48 N. H. 455, 468. The latter case was also one against a common carrier; and while the action was in assumpsit the question was stated to be "whether the carrier of goods which he undertakes to transport, is liable, under the circumstances of this case, for damages arising from the loss of a sale when caused by his delay in delivering the goods." *Ib.*, 467. The rule and the reasons for it were stated as follows: "The damages for the loss of a sale would fall under the denomination of special damages; and, without notice of the fact of such sale, it could not be understood that such a loss would have been foreseen or contemplated by the parties. It is proper that the carrier should understand the extent of the responsibility he assumes, and the consequences of a failure on his part; and if no special circumstances are communicated to him he ought to be held responsible only for the consequences which might ordinarily be supposed to flow from his breach of contract." *Ib.*, 470.

Whether this decision was intended to apply to the right of the plaintiff to recover the remoter damages in any form of action, might perhaps be left in doubt by the ambiguous remarks upon it in the opinion in *Cate* v. *Cate*, 50 N. H. 144. It is not clear whether what is there said is meant to distinguish the earlier case upon the ground that it was an action of assumpsit, or whether the thought sought to be expressed was that the decision went to the right to recover in any form of action. But the suggestions were not adopted by the court, and "are to be regarded as the views of the judge who delivers the opinion." *Ib.*, 149.

As before stated, the authorities are almost unanimous against the right of recovery here set up. Nor are these authorities inapplicable here because of the rule in this state that the question of proximate cause is one for the jury. It is true that in a few cases a recovery has been denied upon a conclusion as to proximate and remote cause which conflicts with the local law upon that subject. But the great majority of the cases rest upon the proposition that the nature of the duty imposed upon the companies is such that the contract rule, rather than the tort rule, as to damages applies. They do not deny the soundness of the tort rule as here defined, but hold that the rule is not applicable to the situation.

The obligation of the companies is held to be a general one, so that,

for example, the sendee of a message may recover in certain cases. Big., Torts, 130. But the measure of damages is determined by the application of the general principles governing the liability of one who makes default of a contract obligation. This view treats the wrong complained of as being what it in substance is — the mere failure to keep an agreement. In the language before quoted, there is "a stipulated duty or service." *Squire* v. *Company*, 98 Mass. 232, 237. Although the obligation is broadly stated to be one owing to the public generally, the more accurate description of the situation is that there is an irrevocable offer of service to the general public. And before any particular person can complain of a breach of duty owed to him, he must show his acceptance of the offer. The obligation as between the plaintiff and defendant is essentially a contractual one. *Hedding* v. *Gallagher*, 72 N. H. 377, 380.

The rule of law by which the telephone company is held to promise service to every one is applied for the purpose of protecting the public against discrimination. Its sole aim is to compel the company to be ready to serve, and to serve all alike, at a reasonable price. There is no sound reason for extending the unusual burden imposed beyond that which will effectuate the purpose in view. When the company is held to the obligation it would have had if, as a private citizen, it had made an express contract upon the terms here imposed by law, the whole object of the law is attained. Anything beyond this puts an unreasonable burden upon the public servant.

It early became apparent to courts that the peculiar rules theretofore applied to one who pursues a public calling and so "exercises a sort of public office" (*McDuffee* v. *Railroad*, 52 N. H. 430, 448) were not applicable in their entirety to this new situation. Since those rules were found not to be wholly applicable, the limit of their applicability was sought through the test of reasonableness. In this way the general American doctrine of the nature and extent of the liabilities of these companies has been worked out. Two rules often announced in this jurisdiction — that precaution is a duty only so far as there is reason to apprehend danger, and that in actions for breach of agreements made by the parties only the reasonably to be apprehended injuries can be recovered for — have had an important influence upon the results reached in these cases. They have been applied generally as they were applied in this state in the case of the common carrier. *Deming* v. *Railroad, supra*.

It may be true that the liability imposed is not capable of an exact definition expressed in the terms of earlier classifications of rights

and remedies. 2 Sed. Dam. *s.* 875. It has developed, as most common law rules have, from the application of established principles to new situations. It has the support of sound reasoning and the great weight of judicial opinion. It has been heretofore recognized in a measure in this state.

Whether the application of the rule to cases of misfeasance, as distinguished from mere non-feasance, as illustrated by the decided cases, can be sustained, is a question not involved in the present instance. The charge here is a negligent failure to perform a duty to render service. If the suit were between private parties, an action sounding in tort could not be maintained. It is not now necessary to go further than to hold that the fact that the defendant is engaged in the public service, does not make its mere failure to perform its duty to serve a wrong different in character from what it would be in the case of a private agreement.

When there are no special circumstances tending to show that the company was chargeable with knowledge of facts from which the likelihood of special damage should be inferred, the plaintiff can recover no more than the ordinary value of the service for which he paid, or to which he was entitled. *Hutt* v. *Hickey*, 67 N. H. 411; *Hurd* v. *Dunsmore*, 63 N. H. 171.

In the present case there was no evidence and no allegation of such knowledge. It is not a case where the defendant knew there was an emergency and thereafter failed to act. It is not a case where the defendant's negligent performance of its contract misled or otherwise injured the plaintiff. It is not a case where the plaintiff did or omitted to do any act relying upon the defendant's obligation, or upon the performance thereof. Whether in such cases, or in any of them, there might be a pure tort liability, so that the broader rule of accountability for damage would apply, is a question which is not involved in this case and upon which no opinion is expressed.

The evidence in this case shows a typical instance of a contract for the usual and ordinary service, with no knowledge or notice of any emergency. The only wrong complained of is the negative one of failing to perform a service to which the plaintiff was entitled under his contract, or because of the promise of service implied from the nature of the defendant's business. In such a case there is no recovery for the results of the unforeseen situation which thereafter arose.

*Exception overruled.*

YOUNG, J., dissented: the others concurred.