Larry **MARSHAK,** Plaintiff, **Appellant,**

v.

Gino **TONETTI, et al.,**
**Defendants, Appellees.**

Nos. 86–1155, 86–1156.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1986.
Decided March 3, 1987.

Clark A. Marcus and Marcus & Marcus, New York City, on brief, for plaintiff, appellant.

Barry J. Kusinitz and Temkin & Miller, Ltd., Providence, R.I., on brief, for defendants, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Contending that he was improperly denied a jury trial and that the district court improperly entered judgment for defendants, awarded defendants attorneys' fees, and imposed sanctions on plaintiff's counsel, plaintiff has appealed from various orders.

We recount the lengthy and snarled procedural background in detail, as it is necessary to an evaluation of plaintiff's claims.

Plaintiff, initially pro se, filed an action in February 1985 alleging that he was the owner of the registered service mark "The Drifters" (denoting a singing group popular in the 1950's for hits such as "Under the Boardwalk") and that defendants had unlawfully used plaintiff's mark. Plaintiff sought a declaratory judgment, an injunction, and damages. The complaint, in its heading, demanded a jury trial. Plaintiff subsequently obtained New York counsel, Clark A. Marcus, and some discovery took place.

Notwithstanding plaintiff's request for a jury trial, by letter dated December 2, 1985, counsel was notified that plaintiff's case would be on the Friday, December 6, 1985 call of the *non*-jury trial calendar. That afternoon when plaintiff's case was reached, defendants announced they were ready to proceed, but plaintiff was not. Rather, plaintiff's counsel, Mr. Simms from Marcus' office, stated that there must have been some mistake as plaintiff had requested a jury trial, and he referred to several issues he felt should be decided by a jury. Simms said that upon receiving the December 2, 1985 letter he had called the clerk's office to point out the mistake. He had not, however, filed a formal motion to be

removed from the non-jury list. Nor, apparently, had he claimed mistake at the call of the list that morning. The court pointed out that there were injunctive and declaratory prayers which the court would have to decide and asked Simms what he wanted to do. Simms' reply (which plaintiff's main brief neglected to mention) was, "I would request that you allow us to go ahead with the non-jury trial ..." (That Simms would ask to proceed non-jury when he had just finished referring to issues he felt were appropriate for a jury may be surprising. The explanation, as subsequent colloquy that day and later would reveal, is that neither Simms nor the court remembered the correct manner of proceeding when both equitable and damages relief are sought.) Simms indicated, however, that he was not ready that day to proceed with a non-jury trial because a crucial Florida witness, Mr. Furcht, had refused to be deposed and plaintiff's motion to compel the deposition was still pending in Florida.

Attempting to discern what issues were really in dispute and how important Furcht's testimony would be, the court asked Simms to explain the theory of plaintiff's case. Simms explained as follows. Plaintiff was the owner of the registered mark "The Drifters," but one Bill Pinkney had been authorized to use or advertise himself as "Bill Pinkney of the Original Drifters" or "Bill Pinkney and the Original Drifters." To plaintiff's dismay, however, Pinkney had been advertised as "The Drifters," and, as part of a consent decree growing out of earlier litigation between plaintiff and Pinkney, Pinkney had agreed to include in all contracts negotiated by or on his behalf a certain caveat concerning how Pinkney could and could not be advertised. Defendants, who were Pinkney's agent, plaintiff said, had been provided a copy of the consent decree, but had not had the caveat inserted into engagements defendants had booked for Pinkney, particularly one at the Eden Roc Hotel in Miami, Florida, as well as some at other Americana Hotels with the result that the Eden Roc and other hotels had advertised Pinkney and his group as "The Drifters." By failing to insert the advertising caveat in contracts defendants negotiated, defendants in effect had aided, abetted, contributed to, or participated in the hotels' subsequent infringing advertising of plaintiff's mark. Simms expected Furcht, general manager of the Eden Roc, to testify that he had no knowledge of restrictions on the way in which Pinkney could be advertised.

The following exchange then occurred: THE COURT: You are not entitled to a jury on declaratory judgments ... or [an] action for an injunction, right? MR. SIMMS: That's correct, your Honor. THE COURT: The only question a jury would have here is fixing damages. I really don't even know whether they would have a question of whether there was an infringement or a violation. For instance, ... if the question of violation or infringement is a jury question on the damages issue, it is possible that a jury could come to a different conclusion [than] I came to; in which case, we would have, if I granted an injunction, an injunction and no damages or vice versa. I don't know under these circumstances you can get the jury on the damages issue. I don't know.

Unfortunately, Simms was not able to help the court with its quandary. The court said that it would postpone plaintiff's case on condition plaintiff reimburse defendants for any expenses defendants had incurred in appearing that day and that plaintiff's case would commence next after a case scheduled for Monday had concluded. The court did not expect the Monday case to take more than a few days and advised the parties to keep in touch with the clerk's office. Plaintiff did not then further object to this scheduling or repeat that he would be unable to get his evidence together by then.

Plaintiff's case was reached five days later, on December 11, 1985. Simms again said he was not ready and requested an extension for two reasons. First, he had not yet obtained the Furcht deposition. Second, he said he had been originally informed the case would be on the January 3rd jury calendar and in the short time since receiving the December 2, 1985 letter

of assignment to the non-jury calendar, he had been unable to obtain lead trial counsel. Marcus was not currently available because his wife was expecting a child any day.

The court responded that plaintiff should be ready as plaintiff had had since February 1985 when his suit was filed to prepare for trial and, furthermore, a pretrial order had put plaintiff on notice that he could go to trial any time after November 15, 1985, whether jury or non-jury. We do not find in the record an order warning plaintiff of an imminent trial date. The court indicated it suspected plaintiff had no evidence and if plaintiff had filed suit without evidence, Rule 11 had been violated. Simms said he did have evidence, but not physically present with him. The court then stated, "I offer to permit you to put in any testimony that you have at this point in time." Simms asked if he later would be able to have a jury trial on damages, would he be proceeding on all aspects of the case or just the requests for declaratory and injunctive relief? The court responded that it would have to hear something on damages before plaintiff could get injunctive relief. Having effectively been denied a continuance, Simms said plaintiff would testify. The court warned that if the testimony were useless, plaintiff would "pay by the minute." As counsel was unprepared for trial, he lacked witnesses to authenticate documents, and the evidence that was presented—plaintiff's and defendant's testimony—was weak. After this testimony, plaintiff rested. Defendants moved for judgment in their favor and the imposition of sanctions, whereupon Simms reiterated his earlier request for a continuance in order to take Furcht's deposition. Simms said he expected Furcht to testify that Furcht was not aware of any advertising restrictions, that defendant had tacitly told Furcht it was permissible to advertise Bill Pinkney as "The Drifters," and that defendant had visited the Eden Roc, seen the misadvertising, and said nothing. The court asked when Furcht's deposition had been noticed, and plaintiff replied October 17, 1985.

The court, while recognizing that the Furcht deposition could be vital to plaintiff's case, concluded that plaintiff had delayed too long and hence any hardship in not having procured it was of plaintiff's own making. The court then denied plaintiff's request for declaratory and injunctive relief, concluding no liability had been shown. The court also ruled that sanctions would be imposed under Fed.R.Civ.P. 11:

> "I am satisfied ... that it certainly cannot be found that this complaint was brought after reasonabl[e] inquiry into the facts, and that it is not warranted by existing law or good faith arguments with extension, modification. I am satisfied that it was brought against the agent simply for purposes of harassment, to cause unnecessar[y] delay or increased cost of litigation."

A week later (December 18, 1985) the court entered a judgment dismissing the prayers for equitable and declaratory relief and ordering plaintiff to pay attorney's fees defendant had incurred in defending the proceeding. No dollar amount has been set.

■ While there is more procedural history, we pause to address several matters. We turn first to the jury trial issue. It is not seriously disputed on appeal that, absent waiver, plaintiff was entitled to a jury trial. As the Supreme Court has stated, where, as here, legal and equitable issues are presented in a single case, absent extraordinary circumstances, the right to a jury trial cannot be lost through prior court determination of the equitable claims. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894–99, 8 L.Ed.2d 44 (1962) (indicating that an action for damages based on trademark infringement is an action at law in which a plaintiff is entitled to a jury trial). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2338 at p. 134 (1971) (if issues of fact are common to both legal and equitable claims and a jury has been demanded on the issues material to the legal claim, a jury must be permitted to determine these is-

sues prior to decision of the equitable claim).

The procedure adopted—trying the case first to the court jury waived—was incorrect. The more difficult question is who should bear the responsibility for this mistake. It is apparent from the exchange quoted at page 5 of this opinion that neither Simms nor the court remembered the proper mode of proceeding when equitable claims are joined with legal ones. Simms' ignorance of the proper procedure is particularly troubling in view of the notice he received placing the case on the non-jury list. We think the average competent lawyer, confronted with the apparent removal of his case from the jury list, but still desiring a jury trial, would undertake at least minimal research to substantiate his claim to a jury trial and supply the court with relevant authority at the earliest opportunity. Simms, instead, however, asked on December 6 to be allowed to proceed with the non-jury aspects, and neither on that day nor on December 11 did he point out that plaintiff's right to a jury trial could not permissibly be foreclosed through prior court determination of equitable claims. A simple reference to the *Dairy Queen* case on December 6 could have answered the court's quandary as to whether there would be anything left for the jury were the judge to find no infringement and set matters straight, avoiding the waste of time and resources which thereafter followed. Judges from time to time will make mistakes. Parties should not sit idly by, failing to point out relevant authority and then hope for redress on appeal. Nevertheless, regardless whether or not plaintiff should bear full responsibility for the bifurcated proceedings, there is a further underlying matter—the advancement of plaintiff's trial date—which we conclude was unfair and requires a new trial. In other words, even if we were to accept defendants' argument that plaintiff in effect waived his right to a jury trial, we would conclude a new trial is necessary.

█ We turn, then, to the court's directive, issued on Friday, December 6, 1985, that plaintiff's case would be tried second, most likely within a few days. We think this scheduling was an abuse of discretion. The notice of the non-jury call of the list for December 6, 1985 was dated December 2. Simms represented at the December 6 call that prior to the receipt of the December 2 letter he had understood plaintiff's case was on the jury list (to be called January 3, 1986, although Simms did not then state the date he understood plaintiff's case would be called). He further indicated that Furcht was an important witness, but had refused to be deposed, and that the motion to compel the deposition was still pending in Florida. Given the short time frame, it was unlikely the Florida court would rule in time for plaintiff to obtain the deposition for the newly advanced trial date. Hence, the court was in essence ordering plaintiff to trial without the testimony of an essential witness.

To be sure, there is more background (some known and some perhaps not known to the district court on December 6) which was not specifically brought out at the December 6 hearing but which is relevant to the court's scheduling order. Furcht's deposition had originally been scheduled for July 1985, but had not taken place because an attorney who appeared with Furcht had earlier represented plaintiff in trademark litigation and plaintiff felt the attorney's presence with Furcht (the attorney did not say he actually represented Furcht) presented a conflict of interest. According to plaintiff's counsel, negotiations then ensued for some months seeking to resolve the conflict of interest. Meanwhile, at a pretrial conference on October 15, 1985, the court had set a discovery completion date for October 18, 1985. As the completion date approached and negotiations had not resolved the conflict of interest matter, Furcht's deposition was once again noticed on October 17, 1985. Although this was but one day before the discovery *completion* date, Simms, in a November 12, 1985 letter to the court discussing discovery problems, stated his understanding that the court had stated any notice of deposition served before the cutoff date—even if the deposition were not taken until after the date—would com-

ply with the deadline. (Neither defendants nor the district court have contradicted plaintiff's understanding.) Disputes continued, the deposition did not take place, and, by a motion dated December 5, 1985 (when the motion was filed does not appear), plaintiff moved in Florida to compel Furcht's deposition.

The district court's position (both in denying various motions for new trial which we shall subsequently describe as well as, apparently, on December 6 in scheduling plaintiff's case next) was that plaintiff did too little too late and hence it was plaintiff's fault that he was not ready in early December for trial. It may be that plaintiff was remiss in waiting until October 17, 1985 to renotice Furcht's deposition, and had confusion not arisen and had the case remained on its original schedule for a January 1986 jury trial but plaintiff had not been ready, we would have a different question. But that is not this case. Rather, the court on very short notice in early December accelerated the trial date by close to a month. This, we think, was unfair.

Rule 9 of the Local Rules of the District of Rhode Island for the United States District Court provides that at the pre-trial conference, a "target" trial date will be set approximately three months from the date of the conference. Here, the pretrial conference took place on October 15, 1985, and hence plaintiff's contention that a January 1986 trial date was contemplated accords with the local rule. The rule continues, "Thereupon the court will assign the case to the continuous trial calendar, to be reached on or about the approved target date. Upon designation of a target date, the court will entertain motions for further discovery to be closed 30 days prior to the target date. . . . So far as is practicable, the clerk of court will give to counsel a 30 day alert notice. If a trial date is not firmly established at that time, a seven day and day-to-day alert notice will follow until

the case is reached." No 30 day or even seven day notice of either the December 6 or December 11 dates appears to have been given.

Under these circumstances—the removal of the plaintiff's case from the jury list which would seem to have been an administrative error, the problems counsel described to the court in deposing Furcht, the failure to give plaintiff the notice he could reasonably expect under the rules—we conclude the court should not have required plaintiff to be ready for trial on December 11.[1]

The question remains, however, whether this scheduling error was harmless in view of what subsequently transpired. We therefore resume with the procedural chronology.

At the close of the hearing on December 11, 1985, it was clear the court felt plaintiff's action was meritless. It was not clear, however, whether plaintiff's entire lawsuit had been concluded by the court's adverse findings or whether, instead, only the requests for equitable relief had been finally disposed of. By letter dated December 16, 1985, plaintiff was informed his case would be on the January 3, 1986 call of the jury trial calendar, and at some point after the December 11 rulings the court (according to plaintiff's uncontradicted representation in his Rule 60 motion), in a chambers conference, informed plaintiff he would receive a jury trial on damages. Counsel asked what remained to be tried to the jury given the court's adverse rulings on liability and the court responded, plaintiff says, "that was for [counsel] to lose a few nights sleep over," a statement which seems to have done little to clarify the muddled situation. On December 18, 1985, the court entered judgment dismissing plaintiff's prayers for equitable and declaratory relief. On December 30, 1985, plaintiff filed a motion for new trial contending that he had wrongfully been denied a jury

1. This is not to say that Simms is without fault. While the court should not have advanced the trial to December 11, the more prudent course would have been for Simms to file a formal motion for continuance prior to December 11, rather than showing up on a day the court had set aside for plaintiff's trial and then telling the court plaintiff was not ready, with the result that it was too late for the court to schedule another case in the plaintiff's place.

trial and that with the accelerated non-jury trial, he had had insufficient time to prepare his case. On January 2, 1986, Furcht's deposition was taken. At the Friday, January 3, 1986 call of the jury list, the court said the jury would hear the case the following Monday (January 6), but warned that if plaintiff did not have evidence linking defendant with the Eden Roc's advertising of "Bill Pinkney and the Original Drifters" as "The Drifters," attorneys' fees would be assessed against plaintiff. That afternoon, plaintiff, either pro se or through local Rhode Island counsel, moved to continue the January 6 trial date. The motion explained that as a result of the court's ruling on December 11, 1985 finding no merit to plaintiff's case and denying equitable relief, plaintiff felt liability issues and, consequently, his entire case had been concluded adversely to him and had not realized his case was still on the jury list. Consequently, he had filed a motion for a new trial and deposed Furcht in connection therewith. Not until that morning at the call of the list (attended by local Rhode Island counsel) had plaintiff realized he was expected to be ready for trial on Monday, January 6, 1986. Plaintiff said he could not be ready for trial on three days' notice and asked for a continuance.

On January 6, 1986, the court asked what new evidence plaintiff had for a jury. Local counsel explained that Furcht had testified that he had asked defendant to book "The Drifters," defendant had booked "Bill Pinkney and the Original Drifters," and Furcht, who was not familiar with rock music, had assumed that even though the contract defendant arranged clearly called for "Bill Pinkney and the Original Drifters," "The Drifters" and the Bill Pinkney group were the same since the names were similar, conversations had been about "The Drifters," and defendant had never informed him of any substitution. Consequently, it was plaintiff's position that defendant had misled (by omission) Furcht into believing that "Bill Pinkney and the Original Drifters" were "The Drifters" with the result that Furcht had misadvertised them and plaintiff's mark had been infringed. This was a somewhat different theory than Simms had articulated on December 6. The court, however, ruled that there was nothing new that would require a jury trial and directed a judgment be entered for defendant and counsel fees be awarded. The motion for continuance (the transcript indicates the court was aware of the motion) was implicitly denied. On January 9, 1986, judgment for defendant for costs and attorneys' fees entered. The amount of attorney's fees was not set.

On January 24, 1986, a hearing was held on plaintiff's motion for a new trial. In response to the court's questioning, Simms revealed that he was not a member of any bar, and the court refused to hear from him. Local counsel (a lawyer, but not a member of the court's bar) then rested upon the arguments stated in the memorandum earlier filed by lead counsel, Marcus of New York. This memorandum for the *first* time pointed out *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and argued the court had improperly denied plaintiff a jury trial on the issues common to both injunctive and damages relief by bifurcating proceedings. Despite the reference to *Dairy Queen*, the court, during the hearing, adhered to its position that plaintiff was not entitled to a jury trial to the extent plaintiff was seeking injunctive and declaratory relief and that therefore the case had properly been placed on the non-jury calendar. The court also rejected the argument that plaintiff had had insufficient notice of and time to prepare for the accelerated trial date and denied plaintiff's motion for a new trial.

The same day (January 24, 1986), plaintiff, claiming newly discovered evidence, filed a Rule 60 and Rule 62 motion for relief from judgment or stay of the orders granting judgment for defendant. The newly discovered evidence was the Furcht deposition. A hearing was scheduled for March 5 on the motion. Local counsel appeared that day, but Marcus, who had filed the motion, did not appear. Marcus was ordered to appear the next day. At the hearing the next day, Marcus represented he had not appeared at any of the earlier hearings because complications had existed

with respect to his wife's pregnancy and still existed despite the child's birth. Marcus said, "I found myself in the worst position I have ever been in my life and unable to travel any place and leave my wife alone." The court thereupon noted that upon calling Marcus's office the preceding day, it had been informed Marcus was in Chicago. Marcus said that was true, he was just now starting to travel again. Furthermore, Marcus had taken Furcht's deposition two months earlier on January 2, 1986 in Florida. The court then asked why Simms from Marcus's office had appeared for plaintiff when Simms was not a member of any bar. Marcus replied that he had instructed Simms to inquire whether Simms could appear, given his status, and Simms had reported back that he had received permission. The court indicated it had spoken with the court personnel who Simms, in a letter to the court, had said had granted him permission and was satisfied no permission had been granted, and the court further queried how Marcus could have reasonably believed permission would have been granted a non-lawyer to try a case, first in the December non-jury session, and then on January 6, 1986 when a jury had been scheduled to be impanelled. Marcus responded that Simms' instructions in January were not to try the case but rather to ask for a continuance so that trial counsel could be obtained.

Next, Marcus was asked why he had not been present at the hearing the previous day. He said he thought local counsel's presence was sufficient, he did not know his presence was required, and plaintiff had asked that Marcus's office no longer represent him in the Rhode Island federal district court. The court thereupon assessed $360 in sanctions (calculated at $10 per minute times 36 minutes of hearing on March 5) on Marcus personally to be paid from his funds (and not plaintiff's) for his failure to appear the previous day. Marcus then argued the merits of the plaintiff's Rule 60 motion going into further details of the history of plaintiff's efforts to depose Furcht. The court denied the Rule 60 and 62 motion.

We return to our question whether the court's advancement of plaintiff's case from January 1986 to December 11, 1985—which we found to be an abuse of discretion—nevertheless can be characterized as harmless error in that the court reset the case on the January jury list in accordance with the original schedule, but plaintiff, on January 3, 1986, nonetheless said he was not ready for trial and moved for a continuance. It might be argued that even though the court had erred in ordering the case tried piecemeal (first non-jury then jury) and in scheduling the non-jury portion three weeks to a month in advance of when plaintiff was reasonably expecting his case to be reached, these errors could have been partially or fully rectified had plaintiff been ready to proceed with a jury trial on January 6. Had the jury found against plaintiff, that would have been the end of plaintiff's case; had the jury found in plaintiff's favor, perhaps the court might have reconsidered its rulings on equitable relief. In other words, there was an opportunity to correct the earlier scheduling and related problems.

We conclude the errors were not harmless or nonprejudicial. First, it was unclear for some time in December whether the court would grant plaintiff a jury trial. And then when the court did inform plaintiff he would have a jury trial (this date is not clear from the record), it was not clear what issues the court would allow to be tried to the jury. This unclarity, we think, hampered trial preparation. Of course plaintiff bears a substantial amount of responsibility for the unclarity as plaintiff was excessively tardy in pointing out *Dairy Queen* to the court. But even after that case was cited, the court adhered to its position that bifurcation was proper, and it is the bifurcation which promoted confusion over what was left for a jury. Second, while plaintiff did ask for a continuance, local counsel for plaintiff did appear on January 6, 1986. It is not clear from the record whether, despite the request for a continuance, if, given no alternative, local counsel would have tried the case had the court permitted plaintiff to proceed. The court, however, based on the evidence it

had heard on December 11—evidence which was incomplete due to the accelerated trial date—plus a brief summary of Furcht's deposition, ruled there was nothing to be tried to the jury and denied plaintiff a jury trial.

Defendant argues that even if the court erred in denying a jury trial or accelerating the trial date, any error is harmless because it is clear—on plaintiff's own articulation of the theory of this case—that defendants under no circumstances could be liable for infringement and that hence there is no point in remanding for a new trial. We are not convinced. The record, viewed most favorably to plaintiff is, in outline form, this: Furcht, on behalf of the Eden Roc, asked defendant to book "The Drifters." Defendant instead booked "Bill Pinkney and the Original Drifters," and did not tell Furcht that the group Furcht had asked for was not the group Furcht got. Could a jury properly conclude that defendant had passed off "Bill Pinkney and the Original Drifters" as "The Drifters" and thereby engaged in trademark infringement or unfair competition as well as contributed to Furcht's advertising and mislabelling of Bill Pinkney's group as "The Drifters"? It is true that the contract Furcht signed specifically identified the performers as "Bill Pinkney and the Original Drifters," but in view of the similarity between the two groups' names, that conceivably may not have been enough to put Furcht on notice of a substitution. *See Coca-Cola Co. v. Overland, Inc.,* 692 F.2d 1250 (9th Cir.1982) (even though restaurant had posted signs that Pepsi was the only cola beverage served, restaurant was liable for trademark infringement and unfair competition when it served Pepsi in response to orders for Coca Cola without first giving customers oral notice of the substitution and an opportunity to accept or reject it); *Coca-Cola Co. v. Dorris,* 311 F.Supp. 287 (E.D.Ark.1970) (same); *Singer Manufacturing Co. v. Golden,* 171 F.2d 266 (7th Cir.1948) (oblique note to the effect that substitutions are sometimes made was insufficient notice; substitutions made in circumstances calculated to lead a purchaser to believe he is getting what he

ordered when in fact he is not, is not only a fraud on the purchaser but also on the manufacturer of the goods ordered). Much may depend on the evidence presented. In short, we are not convinced, at least on the arguments briefed to us, that plaintiff necessarily has no viable claim.

On appeal, plaintiff, in addition to challenging the court's advancement of the trial date to December 11, 1985 and denial of a jury trial, also attacks the orders adjudging plaintiff liable for attorney's fees and the assessment of $360 in sanctions on Attorney Marcus.

■ We have already concluded that the court abused its discretion in advancing the trial date to December 11, 1985, and that this advancement infected subsequent proceedings. Consequently, plaintiff must be given a new trial. In view of that, the attorney fee orders should be reconsidered. The proceedings on remand will be before a different judge. *Haverhill Gazette Company v. Union Leader Corp.,* 333 F.2d 798, 808 (1st Cir.1964). As for plaintiff's challenge to the $360 sanction imposed on Attorney Marcus, we conclude plaintiff lacks standing to appeal that order. Since the award must be paid by Marcus alone, plaintiff has no pecuniary or, we think, other sufficient interest in the award to confer standing to appeal. The case on which plaintiff relies, *Johnson v. Trueblood,* 629 F.2d 302 (3d Cir.1980), involving a client's (as well as an attorney's) appeal from the court's revocation of the attorney's *pro haec vice* status is not to the contrary, for there the client's interest in counsel of choice was directly at stake. Nor is *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), applicable. There, the doctors themselves had an economic interest in the challenged medicaid limitations on abortion reimbursement. Because of significant obstacles to the patients' challenging the restrictions, a plurality of the court determined that departure from the normal rule that a litigant may ordinarily assert only his own right was warranted, and the doctors were permitted to assert both their own interests and those of their patients. In the present case, in con-

**22**

trast, Attorney Marcus was perfectly able to appeal the sanction order had he so chosen. We see no special circumstances to warrant the client challenging the order on the attorney's behalf.

The appeal from the March 18, 1986 order imposing sanctions on Attorney Marcus is dismissed. The December 18, 1985, and January 9, 1986 orders are vacated and the case is remanded for further proceedings consistent with this opinion. Appellant's request to strike appellees' supplemental statement is denied. With respect to appellees' motion to strike appellant's reply to appellees' supplemental statement, appellees are correct that appellant has referred to matter outside the record. Nevertheless, the motion is denied since these tedious back and forth motions are irrelevant to our disposition on the merits. Appellant's request to not accept appellees' motion to strike into the record is denied for the same reason. No costs.