Steve O. ROGERS and Mildred C. Rogers, Plaintiffs-Appellants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PENNSYLVANIA, et al., Defendants-Appellees.

Appeal of HEILPRIN & STRAKELJAHN, S.C.

No. 87-1868.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1988.

Decided Dec. 30, 1988.

Thomas H. Strakeljahn, Heilprin & Strakeljahn, S.C., Lancaster, Wis., for plaintiffs-appellants.

Steven C. Zach, Boardman, Suhr, Curry & Field, Madison, Wis., for defendants-appellees.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

Attorneys Richard Heilprin and Robert Strakeljahn represented a plaintiff in a lawsuit in the District Court for the Western District of Wisconsin. The plaintiff alleged that an inflatable penile prosthesis that had been surgically implanted in him had been defective or negligently designed. Plaintiff's original complaint named as defendants American Medical Systems, Inc. (AMS), the prosthesis' manufacturer, and its insurer, the National Union Fire Insurance Company of Pittsburgh. (Wisconsin law permits joinder of insurance companies in negligence actions, see Wis.Stat.Ann. § 803.04(2) (West 1977).) During the course of the litigation, the plaintiff also added several other defendants, including Dr. Juan Beltran, the doctor who inserted the prosthesis. For ease of reference, we shall refer to AMS and National Union collectively as "AMS" and the additional defendants collectively as "Beltran."

During discovery, AMS arranged for the plaintiff to undergo an independent medical examination by Dr. William Furlow at the Mayo Clinic. The plaintiff presented himself for the examination but for some still-unknown reason, doctors at the Mayo Clinic ended up implanting a new penile prosthesis in him.

Heilprin and Strakeljahn accused AMS and its attorneys of severe misconduct and discovery abuse, and threatened drastic legal sanctions. AMS's attorneys, however, did not know the facts surrounding plaintiff's surgery at the Mayo Clinic. To find out the facts, AMS's attorneys asked Heilprin and Strakeljahn to allow plaintiff's deposition, to cooperate in scheduling a deposition of Dr. Furlow, and to release the plaintiff's medical records from the Mayo Clinic.

Heilprin and Strakeljahn refused those discovery requests.

AMS filed a motion to compel discovery. Heilprin and Strakeljahn, on plaintiff's behalf, filed a motion for sanctions for AMS's and its attorneys' alleged misconduct. That motion asked the court to enter a default judgment against AMS and National Union, and to award attorneys' fees to the plaintiff. On February 20, 1987, the district court held a hearing on both motions, during which Judge Crabb ordered the plaintiff's and Dr. Furlow's depositions, along with other appropriate discovery concerning what happened at the Mayo Clinic. Judge Crabb deferred acting on the plaintiff's motion for sanctions until after the parties completed taking depositions.

In the meantime, the Mayo Clinic's attorneys had obtained an affidavit from Dr. Furlow explaining the events surrounding the plaintiff's surgery. The Mayo Clinic's attorneys had wanted to file the affidavit to explain what happened, but Heilprin had made statements to the Clinic's attorneys that they interpreted as threatening civil and criminal actions against the Clinic because of its role in the surgery. Those threats made the Clinic's attorneys hesitant to file the affidavit because the attorneys feared that Heilprin would claim that the Clinic violated the plaintiff's doctor-patient privilege. Therefore, the Clinic's attorneys sent the affidavit to the court in a sealed envelope, along with a letter (a copy of which went to all counsel of record) asking for the court's guidance.

Heilprin considered the letter from the Mayo Clinic's attorney to be an unethical ex parte communication with the court, and filed a motion asking the court to find the Clinic and its attorneys in contempt. The court held a hearing on Heilprin's motion on February 27. Judge Crabb denied the motion, and admonished Heilprin and Strakeljahn to stop filing flurries of sanctions and contempt motions, warning them that if their behavior did not change "there will be sanctions imposed and they will not be little ones." The hearing then moved on to Dr. Furlow's scheduled deposition. The Mayo Clinic's attorney pointed out to Judge

Crabb that the Clinic had no authorization from the plaintiff to release his medical records, and that a release would be necessary before the parties could depose Dr. Furlow. To solve that problem, Judge Crabb ordered Heilprin and Strakeljahn to produce plaintiff's signed release at or before the deposition.

Judge Crabb ordered AMS's counsel to provide a release for the plaintiff to sign. Well before Dr. Furlow's scheduled deposition, AMS's attorney sent separate letters to Heilprin and Strakeljahn (who had separate office addresses) along with separate copies of an appropriate medical release form. However, Heilprin and Strakeljahn showed up in Rochester, Minnesota for Dr. Furlow's deposition without the signed release. After some argument, Strakeljahn did produce a release, but this release only exacerbated matters: the release authorized the Clinic to release records only to Strakeljahn, and specifically prohibited any doctors or hospital personnel from discussing the plaintiff's condition and treatment with anybody but Strakeljahn. Because Heilprin and Strakeljahn failed to provide a proper release, the Mayo Clinic's attorneys refused to produce Dr. Furlow for the deposition.

AMS filed a motion for sanctions against Heilprin and Strakeljahn which Beltran (whose counsel had also made the fruitless trek to Rochester) joined. On May 14, Judge Crabb ordered Heilprin and Strakeljahn to pay AMS's and Beltran's attorneys the fees and costs they incurred in attending Dr. Furlow's aborted deposition and in bringing and arguing the sanctions motion against Heilprin and Strakeljahn.

Heilprin and Strakeljahn have attempted to appeal the sanctions order. Unfortunately, their bumbling did not end in Rochester. For one thing, Heilprin and Strakeljahn attempted to appeal the sanctions order before the district court entered a final judgment. To be fair, we note that Heilprin and Strakeljahn have argued that the sanctions order was a collateral order and therefore appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This circuit has held that sanctions orders against attorneys are appealable before final judgment as collateral orders, see *Frazier v. Cast*, 771 F.2d 259 (7th Cir.1985), although other courts have disagreed, e.g., *Appeal of Licht & Semonoff*, 796 F.2d 564, 571–72 (1st Cir.1986). But even if we follow *Frazier*, a question exists in this case whether Judge Crabb's May 14 order finally disposed of the question of sanctions against Heilprin and Strakeljahn. At the time Heilprin and Strakeljahn attempted to appeal, another motion for sanctions against them was pending, and the court had not yet resolved all questions concerning Heilprin and Strakeljahn's full liability. One of the conditions for appealability under the collateral order doctrine is that the order appealed from " 'must conclusively determine the disputed question....' " *Frazier*, 771 F.2d at 262 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)). If Judge Crabb's May 14 order did not conclusively determine the sanctions question, the order is not an appealable collateral order.

We need not determine whether the sanctions order was an appealable collateral order, however, because Heilprin and Strakeljahn have committed a more fundamental gaffe: they have failed to file a proper notice of appeal. The notice of appeal that Heilprin and Strakeljahn filed said: "[X] and [Y], plaintiffs, by their attorneys, Heilprin and Strakeljahn, S.C., hereby appeal...." Federal Rule of Appellate Procedure 3(c) provides that "the notice of appeal shall specify the party or parties taking the appeal...." The notice of appeal Heilprin and Strakeljahn filed specified the plaintiffs, not Heilprin and Strakeljahn, as the parties taking the appeal.

▮▮▮ Rule 3(c)'s naming requirement is jurisdictional and inflexible. *Torres v. Oakland Scavenger Co.*, ––– U.S. –––, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); see also *Allen Archery, Inc. v. Precision Shooting Equipment, Inc.*, 857 F.2d 1176, 1177 (7th Cir.1988) (*Torres* "requires us to insist on punctilious, literal and exact compliance" with Rule 3(c)). When a district court sanc-

**560**

tions attorneys the attorneys are the real parties in interest, and the attorneys must appeal in their own names. A notice of appeal naming the party (in this case the plaintiffs) as the appellant, not the attorneys, does not create jurisdiction over the attorneys' appeal. *Hays v. Sony Corp.,* 847 F.2d 412, 420 (7th Cir.1988); see also *Walter v. Fiorenzo,* 840 F.2d 427, 433 n. 6 (7th Cir.1988). Because the notice of appeal does not name Heilprin and Strakeljahn as the parties taking this appeal, we have no jurisdiction over their appeal.

Beltran has requested that we allow him to recover the expenses he incurred, including attorneys' fees, in defending this aborted appeal. (Heilprin and Strakeljahn have settled with AMS and its attorneys, so AMS and its attorneys are no longer involved in this case.) These expenses ordinarily are properly recoverable as part of the expenses incurred as a result of the sanctioned conduct in the district court. Otherwise, the cost of defending the appeal will often offset the award obtained. See *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 475 (7th Cir.1984); *Westmoreland v. CBS,* 770 F.2d 1168, 1179–80 (D.C.Cir.1985). But Beltran failed to discover or brief any of the appellate jurisdictional problems present in this case. We are aware that the Supreme Court did not decide *Torres* until after this appeal was argued, so perhaps Beltran has some excuse for not pointing out the defective notice of appeal before argument; however, there is no excuse for Beltran's failure to raise or brief the problems associated with applying the collateral order doctrine in this case. We have declined to award appellate expenses for a similar reason before. See *Ordower v. Feldman,* 826 F.2d 1569, 1576 (7th Cir.1987). Still, this aborted appeal did cause Beltran some unwarranted expense, and he should receive compensation for at least part of that expense. Therefore, Beltran shall submit proper documentation of his appellate expenses to the clerk of this court, and to Heilprin and Strakeljahn, within 15 days of this appeal.

Heilprin and Strakeljahn shall have 10 days to object to Beltran's request.

APPEAL DISMISSED.