**DCPB, INC., Plaintiff, Appellee,**

v.

**CITY OF LEBANON, Defendant, Appellant.**

**DCPB, INC., Plaintiff, Appellant,**

v.

**CITY OF LEBANON, Defendant, Appellee.**

Nos. 91–1692, 91–1693.

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1992.

Decided Feb. 18, 1992.

Rehearing Denied March 16, 1992.

Thomas W. Costello, with whom Thomas W. Costello, P.C., Battleboro, Vt., Garfield H. Miller, and Hughes, Miller & Candon, Norwich, Vt., were on brief, for plaintiff, appellee.

Mark T. Kremzner, with whom Law Office of Laurence F. Gardner, Lebanon, N.H., was on brief, for defendant, appellant.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

In a rancorous dispute that seems to have been fueled as much by indignation as by the dollars involved, the plaintiff prevailed before the jury, but the extent of its victory was curtailed somewhat by the judge's trimming of the award. At this juncture, both parties solicit our intervention. DCPB, Inc., a Vermont corporation, plaintiff below, beseeches us to restore the jury's verdict to full flower in one of two ways: either by rejecting the district court's vision of New Hampshire law anent enhanced damages or by allowing the pleadings to be amended *nunc pro tunc.* The City of Lebanon, a New Hampshire municipality, defendant and unsuccessful counterclaimant below, seeks an overall new trial based on allegedly erroneous evidentiary rulings. The City also asks that we set aside a monetary sanction levied against its lead counsel. For the reasons that follow, we leave the litigants exactly. where we found them.

## I. BACKGROUND

In 1987, the City hired DCPB as an engineering consultant to review proposed water and sewer improvements in connection with ongoing construction at the Dartmouth–Hitchcock Medical Center (the Center). DCPB billed the City directly for its services (although the City backcharged the Center for these costs under a separate agreement). Through the summer of 1988, all was serene: DCPB rendered services; the City paid DCPB when and as billed; and the Center reimbursed the City.

This tranquil interlude proved to be the calm before the storm. On September 18, 1988, DCPB submitted two final invoices to the City, totalling $53,612.15. Neil Cannon, the City's coordinator on the project, reviewed the invoices and found them reasonable. The Center reimbursed the City for the relevant work. Nonetheless, the City did not pay DCPB. The record permits an inference that the City attempted to use the withheld payment as a bargaining chip in negotiations for the possible settlement of an unrelated dispute with DCPB.

Eventually, DCPB grew weary of the City's stonewalling. Invoking diversity jurisdiction, 28 U.S.C. § 1332 (1988), it brought suit for breach of contract in the United States District Court for the District of New Hampshire. The City counterclaimed to recoup alleged overpayments. After a six-day trial, the case went to the jury on a special verdict form. The jury defenestrated the counterclaim and awarded DCPB the full $53,612.15 plus $53,000 in enhanced compensatory damages.

A flurry of post-trial activity befell. For simplicity's sake, we merely summarize the results insofar as they are pertinent to the appeals. The district court effectively halved the verdict, holding enhanced damages to be unavailable in contract actions. The court denied the remaining post-trial motions, including the defendant's motion for an unconditional new trial. Premised largely on a finding that the City's principal attorney, Laurence F. Gardner, had unreasonably multiplied the proceedings by

causing a bogus counterclaim to be filed, the court sanctioned him.

## II. THE PLAINTIFF'S APPEAL

The plaintiff contends that the jury's award of enhanced damages should have remained intact. The contention is dichotomous. Neither part suffices.

### A. *Judgment as a Matter of Law.*

The parties agree that the substantive law of the forum attaches in this diversity action. Mulling New Hampshire law, the district court granted judgment n.o.v. on the claim for enhanced damages. Our review is plenary. *See Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir.1987).

Punitive damages are not allowed in New Hampshire except in specific instances enumerated by the state legislature.[1] *See* N.H.Rev.Stat.Ann. § 507:16 (Supp.1990). In 1972, however, the New Hampshire Supreme Court authorized the augmentation of compensatory damages in certain cases. *See Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 289 A.2d 66 (1972). This premium, known colloquially as "enhanced damages," differs from punitive damages in that the premium is designed not to punish the wrongdoer but to reflect the aggravating circumstances of an injury caused to the plaintiff. In practical operation, it is only when a wrongdoer's actions are "wanton, malicious, or oppressive" that enhanced damages become appropriate. *Id.* 289 A.2d at 68.

To date, the New Hampshire cases have limited enhanced damages to particular causes of action sounding in tort—and even then, the remedy has been reserved for intentional torts committed under exceptionally unsavory circumstances. *See, e.g., Aubert v. Aubert*, 129 N.H. 422, 529 A.2d 909, 914–15 (1987) (enhanced damages allowable in personal injury action for attempted mariticide); *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 474 A.2d 1056, 1058 (1984) (enhanced damages allowable for intentional misrepresentation involving wanton, malicious, or oppressive conduct); *see also Munson v. Raudonis*, 118 N.H. 474, 387 A.2d 1174, 1177 (1978) (enhanced damages are not available for every intentional tort).

The court below ruled that this doctrine, as heretofore formulated by the New Hampshire Supreme Court, had no bearing on the case as pleaded. We agree. DCPB sued for breach of contract, charging nonpayment of its last two invoices. Under New Hampshire law, failure to make timely payment under a contract does not amount to a tort, unless the plaintiff can demonstrate the breach of some duty independent of the obligations owed under the contract. *See Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576, 580 (1978); *Barrett v. New England Tel. & Tel. Co.*, 80 N.H. 354, 117 A. 264, 265 (1922). Since DCPB's complaint limned no independent duty, and the jury found none, the City's purposeful breach of contract, standing alone, while willful and, indeed, inexcusable, could not present a basis for enhanced damages under the traditional tort rubric.

In grudging recognition of the doctrinal limitations to which the New Hampshire courts have thus far subscribed, DCPB strives valiantly to convince us that, in a proper case, state law would permit enhanced damages not only for egregious torts but also for an egregious breach of contract. We are unpersuaded. No New Hampshire case has so held. Rather, the state courts have limited contract damages to the amount due under the contract, plus interest, plus consequential damages foreseeable at the time of contract formation. *See, e.g., Salem Eng'g and Constr. Corp. v. Londonderry School Dist.*, 122 N.H. 379, 445 A.2d 1091, 1093–94 (1982); *Petrie–Clemons v. Butterfield*, 122 N.H. 120, 441 A.2d 1167, 1170 (1982); *Martin v. Phillips*, 122 N.H. 34, 440 A.2d 1124, 1125–26 (1982).

To be sure, this compendium may include consequential damages for breach of an implied duty of good faith and fair dealing. *See Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 496 A.2d 339, 342 (1985). Even assuming, however,

---

**1.** The parties do not contend that any of the statutory exceptions are applicable in this case.

that DCPB's contract with the City implied good-faith performance by both parties,[2] it in no way follows that enhanced damages are a concinnous remedy for a breach of that implied covenant. Breaches of the covenant of good faith and fair dealing have historically been redressed by awarding consequential damages, which DCPB chose not to seek, as opposed to enhanced damages. *See, e.g., id.; Lawton*, 392 A.2d at 580.

We will not flog an expired equine. There is no viable precedent in New Hampshire permitting the imposition of enhanced damages in a pure breach-of-contract suit. Since the case at bar is engulfed within this generality, judgment n.o.v. was duly entered on this aspect of DCPB's claim.[3]

We add an allonge of sorts. It was the plaintiff who bypassed the state courts in favor of selecting a federal forum. We have warned, time and again, that litigants who choose to sue in a federal court under diversity jurisdiction, shunning an available state forum, cannot realistically expect the federal court to open new state-law frontiers. *See, e.g., Carlton v. Worcester Ins. Co.*, 923 F.2d 1, 3 (1st Cir.1991); *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 744 (1st Cir. 1990); *Porter v. Nutter*, 913 F.2d 37, 40–41 (1st Cir.1990); *Taylor v. Aetna Cas. & Sur. Co.*, 867 F.2d 705, 706 (1st Cir.1989) (per curiam). This case is a marvelous example of the genre.

## B. *The Rule 15(b) Motion.*

Finding the usual channel blocked, the plaintiff attempts to reach safe harbor by sailing a more circuitous route. After judgment n.o.v. was granted and an appeal taken, the plaintiff moved pursuant to Fed. R.Civ.P. 15(b) to conform the pleadings to the proof.[4] In embracing Rule 15(b), DCPB proposed to rewrite its complaint, adding a count which, arguably, might support the award of enhanced damages. The district judge, recognizing that the filing of the notices of appeal had served to transfer jurisdiction over the case from the trial court to the court of appeals, *Hovey v. McDonald*, 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883), refused to act upon the motion. DCPB invites us either to grant the motion outright or to direct that the district judge consider it. We decline both invitations.

The plaintiff's belated attempt to validate the jury's award of enhanced damages rests on the optimistic theorem that conforming the complaint to the proof will do the trick. This theorem, in turn, rests on three hypotheses: (1) the City's conduct amounted to intentional conversion; (2) such a cause of action (intentional conversion) was, in effect, tried consensually by the jury and resolved favorably to the plaintiff; and (3) intentional conversion is the type of tort that will sustain an award of enhanced damages under New Hampshire law. It is readily apparent that, un-

2. In *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 562 A.2d 187 (1989), the New Hampshire Supreme Court restricted the implied covenant to three categories: good faith stemming from the standards of conduct in contract formation, good faith associated with the termination of at-will employment contracts, and good faith arising from a contract relationship where one party exercises unilateral discretion. *Id.* 562 A.2d at 190. This categorical approach severely circumscribes the implication of such a covenant in respect to a contract negotiated, as here, between parties who stand on roughly equal footing.

3. In its briefs on appeal, DCPB raises, for the first time, an asseveration that New Hampshire's denial of enhanced damages in contract cases violates the Equal Protection Clause of the Fourteenth Amendment. This argument is pro-

cedurally defaulted and need not be addressed. *See McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 22 (1st Cir.1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal."); *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (similar). At any rate, the argument is puerile.

4. Fed.R.Civ.P. 15(b) provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; ....

less all three of these hypotheses are supportable, the plaintiff's theorem collapses.

■ 1. *Implied Consent.* We need not look beyond the second hypothesis. Because there is no indication of any express consent to trying a claim of intentional conversion, DCPB's theorem depends on whether the City impliedly consented to trying such a claim. Having searched the record in meticulous detail, we find no sufficient indicium of such consent.

■ Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue. *Campana v. Eller,* 755 F.2d 212, 215 (1st Cir. 1985); *Rokowsky v. Gordon,* 531 F.Supp. 435, 437 (D.Mass.1982), *aff'd,* 705 F.2d 439 (1st Cir.) (table), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983). Here, the emblemata of implied consent are lacking. The City objected throughout the proceedings to the introduction of any evidence related to enhanced damages. It moved to dismiss the claim for enhanced damages. It excepted to the district court instructing the jury on enhanced damages. It opposed the inclusion of enhanced damages in the special questions. When a litigant has fought tooth and nail to remove an issue from the trial and to exclude all evidence offered in relation thereto, it strains credulity to say that the litigant has either "consented to" trying the issue or "acquiesced in" admission of the disputed evidence. *See Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.,* 833 F.2d 1484, 1487 (11th Cir. 1987).

In the present situation, the case against an implication of consent is doubly formidable. In a brief on appeal, DCPB crowed that "all evidence that supposedly went to the issue of enhanced compensatory damages ... also clearly and directly relate[d] to the [basic breach-of-contract] issue." Under the circumstances, that declamation sounds the death knell for an implication of consent. The introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case. *See id.; Cole v. Layrite Prods. Co.,* 439 F.2d 958, 961 (9th Cir.1971); *Monod v. Futura, Inc.,* 415 F.2d 1170, 1174 (10th Cir.1969). Put another way, since the evidence relevant to the plaintiff's supposedly insinuated tort theory was equally relevant to the breach-of-contract theory actually pleaded and tried, the City cannot be said to have impliedly consented to trying the tort theory. *See Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 680 (2d Cir. 1985) ("The purpose of Rule 15(b) is to allow the pleadings to conform to issues actually tried, not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record."); *Gallon v. Lloyd–Thomas Co.,* 264 F.2d 821, 825 n. 3 (8th Cir.1959) (similar).

■ 2. *Prejudice.* Apart from the failure of a key hypothesis, there is another reason why the attempt to amend must fail. The plaintiff's motion was not filed until after trial, verdict, and final disposition of the usual post-trial motions. It is axiomatic that amendments which unfairly prejudice a litigant should not be granted. *Lynch v. Dukakis,* 719 F.2d 504, 509 (1st Cir.1983); *Scully Signal Co. v. Electronics Corp. of Am.,* 570 F.2d 355, 362 (1st Cir. 1977), *cert. denied,* 486 U.S. 945, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978). We have said that "late pleading amendments may be allowed under Rule 15(b) at the discretion of the court, but only to the extent that the party opposing the amendment will not be unduly prejudiced." *Campana,* 755 F.2d at 215. We think that prejudice is an almost inevitable concomitant in situations where, as here, the late amendment attempts to superimpose a new (untried) theory on evidence introduced for other purposes. *See Grand Light & Supply,* 771 F.2d at 680 (acknowledging likelihood of unfair prejudice in situations "[w]here a party seeks to apply evidence presented on a separate issue already in the case to a new claim added after conclusion of the trial").

Moreover, in weighing prejudice, an important factor is whether the movant has shown any justification for its delay in

moving to amend. If, for example, the motion was prompted by emergent facts not earlier discoverable in the exercise of due diligence or by a newly decided case, the movant's position may be strengthened. *See Campana,* 755 F.2d at 216. In the case at hand, the plaintiff has advanced no adequate reason excusing its languor. To the contrary, DCPB's counsel admitted at oral argument that "from the very beginning, [DCPB] knew that [the City's] nonpayment was abusive." Knowledge heightens the need for prompt action. Because DCPB was aware of the factual predicate for the tort claim throughout the litigation and failed to raise that claim until after judgment, we think it would be both unfair, and substantially prejudicial, to permit the injection of a new and different theory of liability at the very stroke of midnight. *See, e.g., American Hot Rod Ass'n, Inc. v. Carrier,* 500 F.2d 1269, 1275 (4th Cir.1974) (upholding district court's denial of late amendment on grounds of fairness); *United States v. Article of Drug,* 320 F.2d 564, 573 (3d Cir.) (similar), *cert. denied,* 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963).

Inasmuch as the plaintiff is unable to bring itself within either the letter or the spirit of Rule 15(b), we refuse to place our imprimatur upon so belated an amendment of the complaint.

## III. THE DEFENDANT'S APPEAL

We turn next to the defendant's appeal. Only two of the proffered issues require discussion.[5]

### A. *Evidentiary Rulings.*

■ The City complains that certain evidence, introduced by the plaintiff for the cardinal purpose of proving an entitlement to enhanced damages, was unfairly prejudicial in connection with the claim for ordinary damages. Rulings admitting or excluding evidence are, as a general matter, reviewable only for abuse of discretion. *Veranda Beach Club Ltd. Partnership v.*

*Western Surety Co.,* 936 F.2d 1364, 1375 (1st Cir.1991); *Lubanski v. Coleco Indus., Inc.,* 929 F.2d 42, 45 (1st Cir.1991); *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1339 (1st Cir.1988). We discern no abuse.

■ The City's defense centered around its suggestion that DCPB's charges were exorbitant. The disputed evidence, which tended to show that the City withheld payment from DCPB not because of overcharging but for purposes unrelated to the reasonableness of the invoices involved, was probative of the City's real motives, hence, relevant. *See* Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also United States v. Tierney,* 760 F.2d 382, 387 (1st Cir.) ("Where ... the disputed evidence is offered to show motive, the relevancy hurdle is at its nadir."), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).

We do not gainsay that the challenged testimony placed the City in an unflattering light. That is almost always true of "ulterior motive" evidence. Yet, "[t]he fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded." *Onujiogu v. United States,* 817 F.2d 3, 6 (1st Cir.1987). The test is whether, considering the evidence's probative worth, its admission would be *unfairly* prejudicial. *See id.* In this instance, we are unable to conclude that the district court, which has considerable leeway in such matters, acted unlawfully in allowing the evidence to be introduced.

### B. *The Order for Sanctions.*

■ When disposing of the various posttrial motions, the district judge, acting *sua sponte,* sanctioned Attorney Gardner. He ruled that the lawyer had vexatiously multiplied the proceedings in contravention of

---

**5.** The defendant also claims that its motion for an unconditional new trial should have been granted by default. The claim, which depends upon a tortured construction of the district court's local rules, is specious. We reject it out of hand.

28 U.S.C. § 1927 (1988).[6] The sanction imposed ($10,746.45) was equal to one-half of DCPB's counsel fees and related costs. Only the City appealed the sanction order.

We consider it settled law in this circuit that when an attorney bears the burden of paying a monetary sanction, the client "has no pecuniary or ... other sufficient interest in the award to confer standing to appeal." *Marshak v. Tonetti*, 813 F.2d 13, 21 (1st Cir.1987); *accord Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1276 (9th Cir.1990); *Bartels v. Sports Arena Employees, Local 137*, 838 F.2d 101, 104 (3d Cir.1988). Neither the record nor the briefs reveal an idiosyncratic set of facts that might serve to deflect the rule's accustomed sweep. Moreover, when asked directly at oral argument in this court to identify his client's pecuniary interest in the sanction, the City's appellate counsel was unable to oblige. Thus, in this case as in *Marshak*, we can find "no special circumstances to warrant the client challenging the order on the attorney's behalf." *Marshak*, 813 F.2d at 22. Gardner, and Gardner alone, possessed standing to appeal from the order for sanctions.

■ Nor can Gardner's standing be juxtaposed with the City's notice of appeal to rescue the day. Litigants cannot piggyback on each other's notices of appeal. Gardner did not file his own notice of appeal. He was not identified as an appellant in the City's notice of appeal. He is, therefore, not properly before this court. *See Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 317 (1st Cir.1989) (en banc) ("We have no jurisdiction over purported appeals sponsored by would-be appellants not specified in a timeous notice of appeal."); *see also* Fed.R.App.P. 3(c) (stipulating that a notice of appeal "shall specify the party or parties taking the appeal").

We need go no further. Because the notice of appeal did not name Gardner as an appellant, and because Gardner did not independently take action although he

"was perfectly able to appeal the sanction order had he so chosen," *Marshak*, 813 F.2d at 22, we are without jurisdiction to examine the merits of the ruling below. *Accord Federal Trade Comm'n v. Amy Travel Serv., Inc.*, 894 F.2d 879, 880–81 (7th Cir.1989); *Rogers v. National Union Fire Ins. Co.*, 864 F.2d 557, 559–60 (7th Cir.1988); *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 429 (2d Cir.1988). After all, "[t]he failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988).

*Affirmed. Each party shall bear its own costs.*

### ORDER OF COURT ON PETITION FOR REHEARING

March 16, 1992.

The petition for rehearing en banc filed by defendant-appellant City of Lebanon is, under this court's internal operating procedures, considered both by the panel and by the full court. Panel rehearing is hereby *denied* for the following reasons.

Appellant's petition seeks to review that portion of the panel opinion wherein the court refused to review an order for sanctions levied against the City's counsel because only the City, not its counsel, had filed a notice of appeal. *See DCPB, Inc. v. City of Lebanon*, 957 F.2d 913, 918–19 (1st Cir.1992). Refined to bare essence, the petition makes essentially five points. None have merit. We respond to each point briefly.

1. The City says that *Marshak v. Tonetti*, 813 F.2d 13, 21–22 (1st Cir.1987) (per curiam), relied on in the panel opinion, was effectively overruled in *Cruz v. Savage*, 896 F.2d 626 (1st Cir.1990). We disagree. *Cruz* did not cite to *Marshak* or mention the question of the appellants' standing to contest the sanction there at issue. Thus,

---

**6.** The statute provides in relevant part:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1988).

920

*Cruz* appears to be nothing more than an instance in which, because the substantive merits of an issue were so apparent—indeed, the *Cruz* court called the sanctions appeal "frivolous," *id.* at 635—there was no need to discuss the question of appellate jurisdiction. *See, e.g., Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) (where substantive merits underlying a jurisdictional issue can easily be resolved to the benefit of the party in whose favor the jurisdictional issue would operate, the jurisdictional inquiry may be avoided); *Secretary of the Navy v. Avrech,* 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974) (per curiam) (similar). *Marshak* is still binding precedent in this circuit.

2. The City says that *Marshak* was wrongly decided. We disagree. The post-*Marshak* cases from other courts, cited by the City, do not offer a convincing reason to believe that the *Marshak* panel reached an erroneous result. Moreover, as pointed out by the panel, *DCPB, Inc.,* 957 F.2d at 919, *Marshak*'s reasoning has been followed in other circuits.

3. The City says that *Marshak* involved a Fed.R.Civ.P. 11 sanction, whereas the case at bar involved a sanction levied under 28 U.S.C. § 1927. That is so. But, for purposes of standing and appellate jurisdiction, that is a distinction without a difference.

4. The City also says it would be unfair, in light of *Cruz,* for us to toe the line drawn in *Marshak.* But, we are dealing here with a matter of appellate jurisdiction, *see Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), not a matter of equitable discretion. Hence, "we lack power to entertain the appeal of any ... would-be appellants not specified in a timeous notice of appeal." *Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 317 (1st Cir.1989) (en banc).

5. The City's final argument is that "the Court of Appeals never determined whether the City of Lebanon would pay the sanctions." This is simply untrue. As noted in the panel opinion, the City's appellate counsel was specifically asked to specify any financial interest that the City might have in the sanction, and was unable to identify any such interest. *DCPB, Inc.,* 957 F.2d at 919. The petition for rehearing is equally silent on this subject. We are satisfied that the City had a fair opportunity to show some "pecuniary or ... other sufficient interest in the award to confer standing to appeal," *Marshak,* 813 F.2d at 21, and failed to do so. The book must, therefore, be closed.

To the extent the rehearing petition contains other arguments, not subsumed in the foregoing, they are bootless. Panel rehearing is *denied.*