871 F.2d 54
 49 Fair Empl.Prac.Cas. 1033,
49 Empl. Prac. Dec. P 38,879
William C. BIGBY, et al., Plaintiffs-Appellees,
and
Maurice Thoele, et al., Intervening Plaintiffs-Appellants,
v.
CITY OF CHICAGO and Chicago Police Department, Defendants-Appellees.
 No. 87-2149.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 16, 1988.
Decided March 7, 1989.
 
 Kenneth N. Flaxman, Chicago, Ill., for plaintiffs-appellees.
 William Hedrick, Skokie, Ill., for intervening plaintiffs-appellants.
 Frederick S. Rhine, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 The intervening plaintiffs in this case challenge the denial of the City of Chicago's motion to vacate the district court's sua sponte order barring further promotions from existing Chicago police lieutenants' promotion rosters. For the reasons discussed below, we dismiss this appeal for lack of jurisdiction.
 
 I. Background
 A. Facts
 
 2
 In the early 1970's, several lawsuits were initiated against the City of Chicago and other defendants, alleging (among other things) the practice of racial and sexual discrimination by the City's Police Department in making promotions to sergeant and lieutenant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. These several suits were consolidated, and in 1976, the district court held that the 1973 sergeants' examination violated Title VII, but denied any relief at that time with respect to those seeking promotion to lieutenant. United States v. City of Chicago, 411 F.Supp. 218 (N.D.Ill.1976). The court imposed mandatory hiring and promotional quotas, to remedy past discrimination, in its final decree.
 
 
 3
 In 1977, the City of Chicago administered an examination for sergeants desiring consideration for promotion to lieutenant. The Police Department established a list of candidates qualified for promotion to lieutenant based on the exam scores and other relevant factors. A group of black police sergeants challenged the validity of this examination, and the district court held that it too violated Title VII. See Bigby v. City of Chicago, 766 F.2d 1053 (7th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) ("Bigby I "). In 1979, the City administered an examination to patrol officers eligible for promotion to sergeant, and as before, the Police Department established a list of candidates. The district court found that the results of this examination had an even more discriminatory impact than the 1973 examination, which made out a prima facie violation of Title VII, shifting the burden to the city to prove that the 1979 examination was valid. See United States v. City of Chicago, 663 F.2d 1354 (7th Cir.1981).[1]
 
 
 4
 While the City was engaged in developing new promotional exams for sergeant and lieutenant, promotions within the Police Department were made from the 1977 lieutenants' list and the 1979 sergeants' list, according to the court-imposed quotas. The City has since developed and administered the new exams.[2]
 
 
 5
 On May 15, 1986, the district court entered, on its own motion, an order barring further promotions from the existing 1977 lieutenants' list. On April 6, 1987, the district court entered an order barring further promotions from the 1979 sergeants' roster. On May 13, 1987, the City filed a motion to vacate these orders. In support of its motion, it claimed that it anticipated a critical shortage of supervisory personnel during the summer of 1987. In a supporting affidavit, the City noted that in addition to the increase in calls for service during the summer months, the Police Department needed to provide service at special events, including but not limited to Puerto Rican Week, the anniversary of State Street and Taste of Chicago. All in all, in order to protect the public safety, the City claimed that the Police Department needed to fill 86 vacancies for lieutenant and 174 vacancies for sergeant. The intervening plaintiffs (a group we will discuss below) claim to have joined in the City's motion to vacate (Appellants' Brief at 1, 3). We have no record of this, however, and the City informed us at oral argument that they believed that the Thoele intervenors had not joined their motion.
 
 
 6
 On June 22, 1987, Judge Marshall conducted a hearing on the motion to vacate. He remarked:
 
 
 7
 I just think, really, that ... a continuation of the denial of sergeants who became sergeants after the 77 roster, and patrol officers who became patrol officers after the 79 roster--I really think that it's just grossly inequitable, grossly inequitable, and that the vacancies which have accrued, that the filling of them should await the completion of the current testing procedures....
 
 
 8
 The bottom line is this. With all respect for the City, I am not persuaded that there is a need.
 
 
 9
 Second, the continued use of the 1979 sergeant and 1977 lieutenants' roster are discriminatory in themselves for the reasons that I have previously articulated.Third, that the ratios which are in place and which have been approved by the Court of Appeals of this Circuit have become apparently--and I haven't heard the evidence on it yet, but from the submissions that have been made, they have become discriminatory, at least insofar as females and black females are concerned.
 
 
 10
 I have accordingly reached the conclusion that the motion to vacate orders prohibiting further promotions to lieutenant and sergeants [sic ] from existing rosters should be denied. And that will be the order.
 
 
 11
 (Transcript of June 22, 1987 hearing at 10-11).
 
 
 12
 The intervening plaintiffs appeal Judge Marshall's denial of the motion to vacate his order of May 15, 1986, wherein he refused to make any further promotions to the rank of lieutenant.[3]
 
 B. Parties
 
 13
 There are four groups of parties in this case. It is important to note who they are because they are unusually aligned in this appeal.
 
 
 14
 Three sets of plaintiffs exist. The first group are the so-called "Thoele intervenors." They are a group of white and Hispanic police officers currently on the existing sergeant and lieutenant promotion lists (those based in part on the 1977 and 1979 examination results) (Appellant's Brief at 19).[4] It is they who purportedly are taking this appeal from the district court's denial of the motion to vacate its orders barring further promotions from the 1977 and 1979 lists.
 
 
 15
 The other two sets of plaintiffs are the "Bigby Subclass 'A' " and the "Bigby Subclass 'B' " plaintiffs. The Bigby Subclass "A" plaintiffs are those of the plaintiff class who would be promoted if the district court's June 22, 1987 order is reversed. The Subclass "B" plaintiffs are the remaining members of the plaintiff class who currently are employed in the position of sergeant in the Chicago Police Department. The Bigby Subclass "A" plaintiffs purportedly (although they have filed no brief) join the Thoele intervenors in their request for reversal of the district court.[5] The Bigby Subclass "B" plaintiffs join the defendants as appellees.
 
 
 16
 The defendants in this action are the City of Chicago and the Chicago Police Department.[6] They participate in the appeal before us as appellees.
 
 II. Discussion
 
 17
 The notice of appeal filed in this matter bore the caption "WILLIAM C. BIGBY, et al., Plaintiffs, and MAURICE THOELE, et al., Intervening Plaintiffs, vs. CITY OF CHICAGO and CHICAGO POLICE DEPARTMENT, Defendants." The text of this notice read, "Plaintiffs and Intervening Plaintiffs hereby appeal the order of the district court entered in this case on June 22, 1987." Defendants have moved to dismiss this appeal for lack of jurisdiction. We agree with them that this appeal should be dismissed.
 
 
 18
 Neither the notice of appeal (nor the caption thereof, but as we shall see, this is irrelevant) specified by name which plaintiffs and which intervenors were appealing the order of the district court denying the City's motion to vacate. Rule 3(c) of the Federal Rules of Appellate Procedure provides in part that a notice of appeal "shall specify the party or parties taking the appeal." In Torres v. Oakland Scavenger Co., --- U.S. ----, 108 S.Ct. 2405, 2408-09, 101 L.Ed.2d 285 (1988), the Supreme Court construed this requirement as mandatory and jurisdictional, holding that an appellate court does not have jurisdiction over parties not named in the notice of appeal. See also Akins v. Board of Governors, 867 F.2d 972, 973-74 (7th Cir.1989); Rogers v. National Union Fire Ins. Co. (Appeal of Heilprin and Straklejahn), 864 F.2d 557, 559 (7th Cir.1988). It also noted that the use of the phrase "et al." in the notice of appeal was not sufficient to indicate the intention to appeal of the party whose name was omitted from the notice of appeal. Torres, 108 S.Ct. at 2409.
 
 
 19
 Torres is directly applicable here. The body of the notice of appeal names none of the individuals taking the appeal. Thus, we do not have jurisdiction over any of the appellants. See Allen Archery, Inc. v. Precision Shooting Equip., Inc., 857 F.2d 1176, 1176-77 (7th Cir.1988) (under Torres, party or parties taking the appeal "must be named in the notice of appeal; naming [appellant] in the caption, or in collateral documents ... will not do").[7]
 
 
 20
 We reject the intervenors' attempt to argue that Torres is distinguishable because here "et al." supposedly is being used "in a more traditional sense"; that is, as an abbreviation for all but the first party in a list of several intervening plaintiffs. The same considerations hold here as in Torres, where the Supreme Court said: "Permitting such vague designation would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions," 108 S.Ct. at 2409. Even if the phrase "et al." were sufficient, which it is not, it appears in the caption of the notice of appeal, not in the notice itself. Allen Archery, 857 F.2d at 1176-77.
 
 
 21
 We also reject what appears to be the intervenors' contention that the phrase "Intervening Plaintiffs" in the notice of appeal is sufficient to designate who is taking the appeal. This phrase is as potentially misleading as "et al." As the intervenors also mention, but gloss over, hoping perhaps that we would as well, the notice of appeal also said that "Plaintiffs" were appealing the district court's order. As we note above in our statement of the background of this case, this was not, as the intervenors claim, "erroneous." It was inaccurate, however, for there are two subclasses of plaintiffs. Each of these subclasses, neither of which was enumerated to us by any of the parties, purports to take a different position in this appeal. We cannot think of a better example than this case to illustrate why Torres now "requires us to insist on punctilious, literal and exact compliance" with Rule 3(c). Allen Archery, 857 F.2d at 1177.
 
 
 22
 Alternatively, the intervenors (and, according to the intervenors' memorandum on this issue, the Bigby Subclass "A" appellees as well) argue that, under the criteria set forth in Chevron Oil v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court's holding in Torres should be limited to prospective application only. This circuit already has addressed this argument in Akins, and ruled in that case that there is "no impediment to applying the holding of Torres to cases pending at the time of the Supreme Court's decision," 867 F.2d at 974.III. Conclusion
 
 
 23
 We DISMISS this appeal for lack of jurisdiction. Because of this, we need not address the remainder of the appellees' contentions, jurisdictional or otherwise.
 
 
 
 [1]
 It is not clear to us from the record in this case whether the City ever offered any such proof. Judge Marshall stated at the hearing on the City's motion to vacate, which is the subject of this appeal, that he declared the 1979 sergeants' examination, along with the 1977 lieutenants' examination, invalid on April 18, 1984. (Transcript of June 22, 1987 hearing at 5)
 
 
 [2]
 The sergeants' exam was completed on May 9, 1987 and the lieutenants' exam was completed on June 6, 1987. The oral portion of both exams was administered beginning in July of 1987. The parties informed us at oral argument that the City published a new promotion list on March 14, 1988 and promoted 102 individuals to the rank of lieutenant
 
 
 [3]
 Although the intervenors contended in their brief that they are appealing 73 C 2080 (involving promotion of patrol officers to the rank of sergeant) as well, the City points out that this court dismissed that appeal on September 11, 1987 for lack of jurisdiction (Brief of City Appellees at 1). It appeared at oral argument that the intervenors-appellants only were arguing about the promotions to lieutenant
 
 
 [4]
 Many of these purported intervenors are no longer in fact intervenors. Some of them (including the first listed intervening plaintiff, Maurice Thoele) already have been promoted to lieutenant, as the Bigby Subclass "B" Appellees informed us in their brief. (Brief of Bigby Subclass "B" Appellees at 8). Others doubtless have died or left the police force by now. In the supplemental memorandum filed by the intervenors in response to our questions at oral argument, they informed us that four of the original fifty-three intervenors are sergeants with the City of Chicago Police Department. The intervenors claim in their memorandum that counsel for the City informed them that all four of these sergeants would have been promoted to lieutenant on June 22, 1987, had Judge Marshall allowed the City to make its 86 promotions on that day. They also claim that, if their pending motion for class certification were to be granted, other persons would be entitled to relief
 
 
 [5]
 Brief of Bigby Subclass "B" Appellees at 3 n. 5. The Subclass "A" plaintiffs, according to the Subclass "B" brief, take no position on the jurisdictional issue in the Subclass "B" brief--that of standing
 
 
 [6]
 A supplemental memorandum filed by the Thoele intervenors names two other defendants: Richard J. Brzeczek and Charles H. Pourian
 
 
 [7]
 Because none of the parties were named in the notice of appeal, we need not, and specifically decline to, address either of the other jurisdictional issues--standing and mootness--raised by the appellees