913 F.2d 419
 17 Fed.R.Serv.3d 1342
 HARTFORD CASUALTY INSURANCE COMPANY, Twin City Fire
Insurance Company, Nutmeg Insurance Company, and
Pacific Insurance Company Limited,
Plaintiffs-Appellants,
v.
BORG-WARNER CORPORATION, BW-Transmissions & Engine
Components Corporation, Borg-Warner Equities Corporation,
Borg-Warner Insurance Holding Corporations, Borg-Warner
Insurance Services, Incorporated, and Borg-Warner Acceptance
Corporation, Defendants-Appellees.
 No. 89-2920.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 6, 1990.
Decided Sept. 18, 1990.
 
 James I. Rubin, Sue Payne, Robert N. Hermes, Stephanie Leider, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for plaintiffs-appellants.
 Lee A. Watson, Donald E. Egan, Clay A. Tillack, Linda L. Cashmore, Katten, Muchin & Zavis, Chicago, for defendants-appellees.
 Before WOOD, Jr., FLAUM, and KANNE, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 The McCarran-Ferguson Act gives the states the power to regulate the insurance industry. See 15 U.S.C. Sec. 1012. As part of that power, Illinois, like most other states, has enacted a scheme for the liquidation or rehabilitation of insolvent insurers. See ILL.REV.STAT. ch. 73, pp 799-833.11. As creditors of an Illinois insurance company going through the rehabilitation process, Hartford Casualty Insurance Company and three of its subsidiaries have sued the insurance company's parent, Borg-Warner Corporation, and five of the parent's other subsidiaries. Because any federal court judgment in this case would upset the rehabilitation proceedings, we affirm the district court's decision to abstain.
 
 I.
 
 2
 In 1974, Borg-Warner formed Centaur Insurance Company to serve as its captive insurer. In addition, Borg-Warner allowed Centaur to write insurance and reinsurance policies for nonaffiliated entities. From 1981 through 1984, Hartford ceded, or reinsured, some of its policies to Centaur. Of course, for taking on part of Hartford's exposed risk, Hartford had to pay substantial premiums to Centaur. As early as 1984, Centaur had begun to default on obligations it owed to Hartford.
 
 
 3
 In September 1987, the Illinois director of insurance started rehabilitation proceedings against Centaur in the circuit court for Cook County. Exempt from the Bankruptcy Code's coverage, see 11 U.S.C. Sec. 109, insolvent insurers generally must turn to state courts for relief. See generally Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1038-41 (3d Cir.1988). The process is similar, however, to federal bankruptcy proceedings.
 
 
 4
 Pursuant to an agreed order of rehabilitation, the director of insurance took control of Centaur's business and assets. Simultaneously, the rehabilitation court issued an order enjoining all actions against Centaur, its directors, officers, or stockholders. On January 11, 1988, the Illinois circuit court modified that order to permit actions against Centaur's directors, officers, and stockholders; actions against Centaur itself are still enjoined.
 
 
 5
 Shortly after the stay order was lifted, Hartford filed this complaint against Borg-Warner and its subsidiaries for their role in Centaur's demise. Hartford advances four theories for recovery: abuses of the corporate structure that justify piercing of the corporate veil, fraud, reckless misrepresentation, and promissory estoppel. According to its own estimates, Centaur's insolvency will cost Hartford up to $15,000,000. In the rehabilitation proceedings, Hartford has filed a claim for reinsurance debts that it asserts Centaur owes. Any liability that Borg-Warner would have to Hartford will be the difference between the amount that Centaur owes to Hartford and the amount of the dividend from Centaur's rehabilitation. Thus, the amount that Hartford would be able to collect from Borg-Warner is dependent on the state court adjudicating claims against insolvent Centaur, but it is unlikely that Hartford will receive all of the money owed by Centaur. Borg-Warner's liability is also dependent on interpretation of Centaur's reinsurance treaties with Hartford.
 
 
 6
 As part of the rehabilitation process, Illinois law authorizes the director of insurance to file a reorganization plan. ILL.REV.STAT. ch. 73, p 804(3). The director filed a reorganization plan for Centaur in May 1988. The plan provided for reinsurance claims, such as those owing to Hartford, to be paid out of any funds left after paying administrative costs and the primary or direct claims of Centaur's policyholders. Later, the director filed a complaint with the Illinois state court seeking to convert the proceedings to a liquidation. Borg-Warner opposed this change, and the state court granted the director's motion to withdraw the liquidation complaint voluntarily. Subsequently, the director filed a progress report on the status of the rehabilitation proceedings, stating that approximately half of the work necessary to evaluate claims against Centaur has been completed.[1] Nevertheless, Hartford contends that it will be 1997 before the precise deficiency in Centaur's estate is known.
 
 
 7
 The district court dismissed Hartford's complaint without prejudice. Because Borg-Warner's liability to Hartford would not be fixed until the end of the state court proceedings, the district court found Hartford's claims to lack ripeness. In addition, because of an identity of issues with the state court--Centaur's liability to Hartford--the district court also held that abstention would be appropriate. Finally, the district court sua sponte dismissed Hartford's alter ego claim for a lack of standing. Hartford now appeals, both from the district court's initial order and from its denial of reconsideration.II.
 
 
 8
 After oral argument, although no question about jurisdiction had been raised, we, as a matter of course, examined Hartford's notice of appeal. Doubts about its adequacy arose in view of developing case law. We therefore requested additional briefing.[2] Reproduced in its entirety, the notice of appeal reads:
 
 
 9
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 10
 HARTFORD CASUALTY INSURANCE COMPANY, TWIN CITY FIRE
 
 
 11
 INSURANCE COMPANY, NUTMEG INSURANCE COMPANY,
 
 
 12
 PACIFIC INSURANCE COMPANY, LTD., Plaintiffs,
 
 
 13
 v.
 
 
 14
 BORG-WARNER CORPORATION, BW-TRANSMISSIONS & ENGINE
 
 
 15
 COMPONENTS CORPORATION, BORG-WARNER EQUITIES CORPORATION,
 
 
 16
 BORG-WARNER INSURANCE HOLDING CORP., BORG-WARNER INSURANCE
 
 
 17
 SERVICES, INC., and BORG-WARNER ACCEPTANCE CORPORATION, Defendants.
 
 No. 88 C 0783
 Judge Marshall
 NOTICE OF APPEAL
 
 18
 Notice is hereby given that the plaintiffs in this action, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the following orders and judgement:
 
 
 19
 (1) The Memorandum Order and Judgement entered thereon dated April 17, 1989, dismissing plaintiffs' Complaint, without prejudice.
 
 
 20
 (2) The Memorandum Order dated August 9, 1989 denying plaintiffs' [sic ] Motion for Reconsideration of the April 17, 1989 Memorandum Order and Judgement entered thereon.
 
 
 21
 /s
 
 One of the Attorneys for Plaintiffs
 
 22
 At issue is whether the list of the appellants in the notice of appeal's caption coupled with the body's reference to "the plaintiffs" together satisfy FED.R.APP.P. 3(c)'s specificity requirement.
 
 
 23
 None of the parties dispute who intended to appeal from the district court judgment, but lack of confusion over the putative appellants is an irrelevant inquiry after Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). See also Baucher v. Eastern Ind. Prod. Credit Ass'n, 906 F.2d 332, 334 (7th Cir.1990); FTC v. Amy Travel Serv. Inc., 875 F.2d 564, 577 (7th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989). In Torres, sixteen plaintiffs had filed an employment discrimination action, which the district court promptly dismissed for failure to state a claim. All sixteen plaintiffs wanted to appeal, but through a clerical error, one of the plaintiffs, Jose Torres, was left out of the notice of appeal. 487 U.S. at 313, 108 S.Ct. at 2407. The Supreme Court ruled that the omission of Mr. Torres's name was more than just a clerical error: it was a failure to appeal that deprived the appellate court of jurisdiction over Torres. Id. at 314, 317, 108 S.Ct. at 2407, 2409. Moreover, the Court rejected the notion that use of the phrase "et al." sufficiently designated Mr. Torres as an appellant. Id. at 317-18, 108 S.Ct. at 2409-10.
 
 
 24
 After Torres, we have required "punctilious, literal and exact compliance" with FED.R.APP.P. 3(c)'s requirements for a notice of appeal. Allen Archery, Inc. v. Precision Shooting Equip., Inc., 857 F.2d 1176, 1177 (7th Cir.1988). Thus, we have rejected arguments that a caption containing names of putative appellants will save an ambiguous notice of appeal. See Barnett v. Stern, 909 F.2d 973, 977-78 (7th Cir.1990); Bigby v. City of Chicago, 871 F.2d 54, 56-57 (7th Cir.1989); Allen Archery, 857 F.2d at 1177. Contrary to suggestions by other circuits, however, we have never adopted a blanket rule that we always ignore the caption in deciding whether the notice of appeal is adequate. See Minority Employees of Tenn. Dep't of Employment Sec. v. Tennessee, 901 F.2d 1327, 1335 (6th Cir.1990), Mariani-Giron v. Acevedo-Ruiz, 877 F.2d 1114, 1116 (1st Cir.1989). Our case law stands for nothing more than the unremarkable proposition that where the caption and the body of the notice of appeal are ambiguous even when read together, it is inappropriate to consider as appellants parties named only in the caption. Torres compels nothing less; where the notice of appeal as a whole is ambiguous, it has failed to specify the party or parties taking the appeal as required by rule 3(c).
 
 
 25
 For example, in Allen Archery, the notice of appeal's caption listed "Precision Shooting Equipment, Inc. and Paul E. Shepley, Jr." as parties, but the body specified that only the corporation appealed from the judgment of the district court. 857 F.2d at 1176. In this situation, the caption could not clarify the statement in the body that only one party was appealing. The caption in the notice of appeal in Bigby read in part, "William C. Bigby, et al., Plaintiffs, and Maurice Thoele, et al., Intervening Plaintiffs," but the body stated that the "Plaintiffs and Intervening Plaintiffs" appealed the district court's order. 871 F.2d at 56-57. In Bigby, we could not discern who was appealing from the district court's order even by looking at the notice of appeal's caption; the caption's use of the phrase "et al." failed to specify who was appealing the same way that the body's use of the phrase "Intervening Plaintiffs" left us wondering who the appellants were. Id. at 57. Finally, the Barnett notice of appeal's caption told us the parties were "Ralph Barnett, et al.," but the notice of appeal's body said that "Louis W. Levit, Trustee" was the party doing the appealing. 909 F.2d at 977. Faced with conflicting signals from the notice of appeal's body and caption, we made the rational choice that the body had the controlling passage. Id. at 977. While each of these cases contain language about ignoring the caption of a notice of appeal, that language should not be separated from the facts of each case.
 
 
 26
 Thus, none of our precedents require us to reject Hartford's notice of appeal, but this lack of precedent does not instruct us how to rule on the notice of appeal in this case. Nevertheless, we think that the better and more rational result would be to accept Hartford's notice of appeal as effective. Read as a whole, the face of Hartford's notice of appeal unambiguously specifies each of the parties wanting to appeal, satisfying the requirements of rule 3(c). The caption lists Hartford Casualty Insurance Company and three of its subsidiaries as the "plaintiffs." We do not have a situation where other parties, not listed in the caption, are presenting themselves to this court as appellants. Most importantly, the body of the notice of appeal states that "the plaintiffs" appeal from the district court's order, which can only be understood as a reference back to the plaintiffs listed three inches above in the caption. We do not have to go outside the four corners of this notice of appeal, set forth on one sheet of paper, to ascertain who is appealing from the district court's judgment. We join the Tenth Circuit in ruling that a notice of appeal is sufficient where the caption names all of the parties seeking to appeal and where the text in the body sufficiently identifies the parties through the use of a generic term such as "plaintiffs" or "defendants." See Tri-Crown, Inc. v. American Fed. Savings & Loan Ass'n, 908 F.2d 578, 579-81 (10th Cir.1990) (per curiam). We have stopped short, however, of effectively overruling Bigby by joining other circuits, see Minority Employees, 901 F.2d at 1335-36; Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 316-17 (1st Cir.1989); Cotton v. U.S. Pipe & Foundry Co., 856 F.2d 158, 162 (11th Cir.1988), where the notice of appeal's caption does not name all of the parties, the use of a generic term to identify the appellants is insufficient to confer jurisdiction over any of the appellants.
 
 
 27
 The result that we reach today comports with the general admonishment that we should construe our procedural rules to do substantial justice. See FED.R.CIV.P. 1. While all rules of procedures are harsh technicalities when applied strictly, see Torres, 487 U.S. at 319, 108 S.Ct. at 2410 (Scalia, J., concurring), the Supreme Court's decision in Torres does not require us to abandon common sense in construing rule 3(c). If we found Hartford's notice of appeal defective, it would only be because the appellants listed themselves three inches too high--in the caption instead of the notice's body. Such a result would meaninglessly exalt form over substance contrary to the last sentence of rule 3(c) and harken back to the days when a lawyer's failure to cross his t's and dot his i's could be potentially fatal for his client. See, e.g., Murphy v. Summerville, 7 Ill. (2 Gilm.) 360 (1845); Averill v. Field, 4 Ill. (3 Scam.) 390 (1842).
 
 
 28
 Our holding is not to suggest that the notice of appeal accepted in this case is approved procedure. To file a notice of appeal not in "punctilious, literal and exact compliance" with rule 3(c) will cause needless and risky line drawing between jurisdiction and no jurisdiction. To be safe, appellants to this court are advised to list every appellant within the body of the notice of appeal. We turn to the merits of this appeal.[3]
 
 III.
 
 29
 The district court dismissed the plaintiffs' complaint without prejudice on three alternative grounds: ripeness, abstention, and standing. As the appellant, Hartford naturally takes issue with each one of these grounds. In each party's brief, ripeness, abstention, and standing are treated as independent concepts, but we have not been able to separate these concepts as easily. Wright and Miller suggest that ripeness, abstention, and standing (as well as mootness and the political question doctrine) are manifestations of the same concept. See C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE Secs. 3531.12, 3532.1, 3533.1 (1984). This position has support in the cases. Mootness and ripeness can be easily related: to the extent that ripeness represents a claim that is premature, mootness represents a claim that is too stale. When the ripeness inquiry involves concerns over state court or administrative proceedings, it can likewise begin to blend with abstention doctrines. See, e.g., Standard Alaska Prod. Co. v. Schaible, 874 F.2d 624, 627-30 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990); Women's Community Health Center v. Texas Health Facilities Comm'n, 685 F.2d 974, 977 n. 7 (5th Cir.1982).
 
 
 30
 We will leave to the commentators to develop the myriad of other interactions between these doctrines, but we will try to identify the competing concerns in this case. To a certain extent, Hartford's complaint raises ripeness problems. With the amount and existence of Hartford's damages dependent on the outcome of the state rehabilitation proceedings, it is difficult for a federal court to determine whether Hartford has sustained any injury. See Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106-07 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Additionally, Hartford has raised an alter ego claim for Borg-Warner's treatment of Centaur, and this raises problems of standing under our decision in Koch Refining v. Farmers Union Cent. Exch., 831 F.2d 1339 (7th Cir.1987), cert. denied, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). Nevertheless, we believe that this case is best understood in terms of abstention, but standing and ripeness concerns still inform our decision.
 
 
 31
 Looking to abstention doctrine, we find another troubled inquiry: what kind of abstention is appropriate? In Colorado River Water Conservation District v. United States, 424 U.S. 800, 813-17, 96 S.Ct. 1236, 1244-46, 47 L.Ed.2d 483 (1976), the Supreme Court suggested that there were three different kinds of abstention and then went on to create one more. Without an exhaustive analysis of all of abstention's various flavors, we can narrow down our possibilities to two. We have recently characterized Colorado River abstention as appropriate when "a state establishes a forum for consolidated proceedings involving a complex of related questions." Stamp v. Insurance Co. of N. Am., 908 F.2d 1375, 1379 (7th Cir.1990). The other alternative, Burford abstention, "compels federal courts to stay their hand lest they provoke needless conflict with the administration by a state of its own affairs." Kelly Servs., Inc. v. Johnson, 542 F.2d 31, 32 (7th Cir.1976).
 
 
 32
 Abstention under Colorado River rests "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Thus, Colorado River aims mainly at preventing duplicative litigation. In this case, Hartford's claims against Borg-Warner cannot be brought in a state proceeding designed to rehabilitate Centaur, thereby eliminating any concern over federal litigation that would only duplicate state court efforts. Because Hartford's claims cannot be wound up in a central forum that includes Centaur's rehabilitation, Colorado River does not apply on its face. Stamp, at 1379.
 
 
 33
 Although traditional Colorado River abstention does not apply to this case, its principles provide us with some guidance. Courts and legal scholars have tried to label the various kinds of abstention and then make broad rules about what cases fit under each label. Abstention is a much more amorphous concept. See New Orleans Pub. Serv. Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) [hereinafter "NOPSI"]; Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987). For a federal court to adjudicate Hartford's claims, it would have to duplicate state court efforts at determining the existence and the amount of Centaur's liability to Hartford. While Hartford's exact claim may not be remedied in the state court proceedings, there would be issues common to both the federal and the state court. Therefore, while Burford abstention covers the circumstances of this case, we cannot entirely forget the teachings of Colorado River.
 
 
 34
 In two circumstances, Burford abstention is appropriate. First, we should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the present case. NOPSI, 109 S.Ct. at 2514. Second, we should abstain from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. Id. Mindful of the admonition that abstention is the exception and not the norm, see id. at 2513; Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244, it is the second type of Burford abstention that concerns us here.
 
 
 35
 The Tenth Circuit has recently elucidated four factors that help in determining whether a federal court should exercise its jurisdiction within the context of the insurance industry. See Grimes v. Crown Life Ins. Co., 857 F.2d 699, 704-05 (10th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989). First, is the suit based on a cause of action that is exclusively federal? Second, does the suit require the court to determine issues that are directly relevant to state policy in the regulation of the insurance industry? Third, do state procedures indicate a desire to create special state forums to regulate and adjudicate these issues? Fourth, are difficult or unusual state laws at issue? While not the sole means of analysis, the Grimes decision is useful guidance.
 
 
 36
 Considering these factors and the most recent Supreme Court precedent, we believe that Burford abstention would be appropriate in this case. Pursuant to the McCarran-Ferguson Act, see 15 U.S.C. Secs. 1011-1015, the states have assumed primary responsibility for regulating the insurance industry. Under this regulatory power, most states have adopted statutes to govern the rehabilitation and liquidation of insolvent insurers. It is the states that have the paramount interest in an uniform insurance rehabilitation process. See Blackhawk Heating & Plumbing Co. v. Geeslin, 530 F.2d 154, 159-60 (7th Cir.1976). Thus, there are a large number of cases where federal courts have abstained lest they upset ongoing state insurance insolvency proceedings. See Lac D'Amiante du Quebec v. American Home Assurance Co., 864 F.2d 1033, 1048 (3d Cir.1988) (collecting some of the cases). With the McCarran-Ferguson Act stating congressional policy that insurance regulation is up to the states, it is difficult to understand how Hartford can maintain that a federal court should entertain a lawsuit where it will have to decide the amount and existence of liability that an insolvent Illinois insurer owes to Hartford.
 
 
 37
 But Hartford belittles the policies involved in this litigation, characterizing this lawsuit as involving nothing more than a dispute between an insurer's parent and one of the insurer's customers. The importance of the state policies at issue, however, go far beyond the present litigation. It is these larger policies that we must consider, and not the comparatively small stakes of this litigation. See Lac D'Amiante, 864 F.2d at 1047. In effect, Hartford is attempting to jump ahead of Centaur's other creditors by filing a lawsuit outside the state rehabilitation proceedings. Where similar suits would not be disruptive of the rehabilitation process, a federal court would have to hear the case. For a federal court to hear Hartford's present claim, however, it would have to determine the deficiency that Centaur will owe--an issue that will also be decided in the state rehabilitation court. The probability of inconsistent decisions between the state and federal systems would lead to incongruous results, with Hartford perhaps receiving more than it should have been entitled to receive. Allowing suits similar to Hartford's action to proceed would lead to a system where the states would not control the ultimate distribution to creditors of insolvent insurers. Such a federal usurpation of state control over insolvent insurers would be inconsistent with the McCarran-Ferguson Act and general notions of comity.
 
 
 38
 That any federal court judgment would overlap with a state court's determination of the amount and existence of Centaur's liability to Hartford is clear. Borg-Warner would only be liable to Hartford for the deficiency in Centaur's debt. The deficiency that Centaur will owe to Hartford will depend on the amount that Hartford is able to collect on Centaur's debt from the state rehabilitation court. The amount, if any, of Centaur's debt to Hartford depends on interpretation of lengthy reinsurance treaties between these two parties. Therefore, to hear Hartford's case, a federal court would not only have to estimate the dividend that reinsurance creditors of Centaur will receive from the rehabilitation process but also would have to interpret the reinsurance treaties. The state rehabilitation court will also have to determine the dividend that reinsurance creditors will receive and interpret the reinsurance treaties to fix the exact amount of Hartford's claim.
 
 
 39
 Somewhat troubling is the state court's lifting of its moratorium against lawsuits suing Centaur's stockholders, officers, directors, employees, and other agents. The lifting of the moratorium was done at the behest of the Illinois director of insurance, providing Hartford with ammunition for its argument that even the state of Illinois would not consider its suit against Borg-Warner disruptive of Centaur's rehabilitation. The lifting of a general moratorium on lawsuits against Centaur's stockholders does not provide the unambiguous evidence that Hartford claims it does. We agree with the implied decision of the Illinois rehabilitation court that some suits against Centaur's stockholders could be appropriate at this time. That does not mean, however, that all of these suits should be blissfully entertained in federal court. In the circumstances of this case, the disruption of a federal court judgment justifies abstention.
 
 
 40
 Hartford devotes much of its brief to elaborating the harm that will befall it by our abstention from its case. Specifically, Hartford asserts that it will take ten years for the rehabilitation proceedings to be complete, and by this time, it will be impossible to bring any claims against Borg-Warner because the lapse of time will have destroyed the evidence. But abstention is not forever. By abstaining, we are only saying that at this time it is inappropriate for a federal court to hear this case. When the state rehabilitation court fixes the amount of the dividend to Centaur's reinsurance creditors and ascertains the amount of Centaur's liability to Hartford, the possibility of a federal court judgment upsetting the state proceedings will be minimized. When these conditions are met, Hartford can then come back to federal court with its lawsuit.
 
 
 41
 Any loss of evidence due to the passage of time is Hartford's own doing. With some types of abstention, we have held that a stay rather than a dismissal is an appropriate remedy. See LaDuke v. Burlington N. R.R., 879 F.2d 1556, 1561-62 (7th Cir.1989). Because our concern in this case is the disruption of ongoing proceedings in another jurisdiction, we might have granted a stay rather than a dismissal had one been requested. At oral argument, we were informed that a California state court entertaining a similar cause of action against Borg-Warner by other plaintiffs had stayed its proceedings until the end of the Illinois rehabilitation process but allowed discovery to continue. Hartford, however, did not request this relief. Both at oral argument and in its briefs, Hartford requests only that we overturn the district court's decision. We will not sua sponte issue a stay that neither party has addressed or attempted to delineate.[4]
 
 IV.
 
 42
 For a federal court to award a judgment to Hartford, it would have to invade the province of the state rehabilitation court in deciding damages. Therefore, the judgment of the district court abstaining from this case and dismissing Hartford's complaint without prejudice is
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 Although some of these events occurred after the district court rendered its decision, we should consider these events, just as we would with a ripeness claim. See Buckley v. Valeo, 424 U.S. 1, 113-14, 96 S.Ct. 612, 679-80, 46 L.Ed.2d 659 (1976); Regional Rail Reorganization Act Cases, 419 U.S. 102, 139-40, 95 S.Ct. 335, 356-57, 42 L.Ed.2d 320 (1974)
 
 
 [2]
 We remind both parties that the unpublished orders of this court as a general rule are not to be cited as precedent. 7TH CIR.R. 53(b)(2)(iv)
 
 
 [3]
 In this case, the question of the notice of appeal's adequacy turned upon subtle variations between its form and the form of notices of appeal rejected in other cases. Substantial judicial resources have been expended pondering over the minutiae involved in this inquiry. We join the Sixth Circuit in suggesting that a revision of rule 3(c) might clear up some of the confusion created in the wake of Torres. See Minority Employees, 901 F.2d at 1335 n. 4
 
 
 [4]
 Before the district court, Borg-Warner even moved alternatively, for a stay or dismissal without prejudice of Hartford's complaint. Thus, Hartford can hardly claim it never had the opportunity before this court to suggest the appropriateness of a stay